## LOW *v.* RAILROAD.

Payment or tender of assessed land-damages is required before land can be taken for a railroad use, without the owner's consent, under Gen. Laws, *c.* 160, *ss.* 29, 22 ; the statute does not authorize a reduction of

the damages on appeal when they have been paid to the land-owner or the state treasurer; and the land-owner does not waive his right of appeal by receiving the amount awarded.

In determining the value of lands appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the inquiry in such cases being, What, from their availability for valuable uses, are they worth in the market?

As a general rule, compensation to the owner is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.

APPEAL, by the plaintiff, filed May 17, 1882, under Gen. Laws, *c.* 160, *ss.* 29, 17–22, from an assessment of damages for land of the plaintiff taken for railroad depot purposes. The sum assessed was tendered to the plaintiff by the defendants before they entered upon the land, and before he took this appeal, and he refused to accept it. May 17, 1882, the defendants paid the same sum to the state treasurer, and filed in his office reasonable security for the payment of any further damages and cost which might be awarded on the appeal, as required by *s.* 22. June 8, 1882, the plaintiff received the money from the state treasurer, and gave him a receipt containing this clause,—" hereby expressly claiming that the same is in part payment only of the damages, and reserving all rights of appeal, and without prejudice to my appeal already taken, and waiving no rights." The defendants claimed that the plaintiff's receipt of the sum assessed was a waiver of his appeal, and seasonably moved to dismiss. The court denied the motion, and the defendants excepted. The defendants also excepted to instructions given to the jury.

*Chase & Streeter*, for the defendants.

*S. C. Eastman* and *W. L. Foster*, for the plaintiff.

CLARK, J. The exercise of the power of eminent domain for railroad uses was not authorized by the Revised Statutes. "No railroad corporation shall take any land for the use of such corporation without the consent of the owner thereof." Rev. St., *c.* 142, *s.* 1. By the act of December 25, 1844 (Laws of 1844, *c.* 128), railroads were declared to be public corporations in certain cases, and a board of railroad commissioners established authorized to lay out railroads on petition, and, in conjunction with the road commissioners for the county, to assess the damages to the land-owners; and the same right of appeal was secured to the land-owners as was provided in section eight of chapter fifty-one of the Revised Statutes, which was,—" If any such owner shall be dissatisfied with the

amount of damages awarded him by the commissioners * * * he may appeal to the court of common pleas next to be holden in the county, and not afterwards, and thereupon said court shall assess his damages by a jury; and if he recovers a greater sum than that allowed by the commissioners, he shall have full costs against the town; if an equal or less sum, he shall pay costs." It was also provided that the damages should be paid to the land-owner only in case of entry to construct the road, and that no land should be entered upon until the damages assessed were paid or tendered as required in case of highways made by towns. Under this statute the corporation had no right of appeal, and it must pay or tender the amount of damages assessed before entering to construct its road.

By the act of July 3, 1845, it was provided " That in case an appeal shall be taken from the decision of the commissioners, the corporation may, on giving or tendering to the land-owner security to the satisfaction of the road commissioners for the county that they will pay such damages and costs as may be adjudged against them in such appeal, immediately enter on the land to construct a railroad." Laws of 1845, *c.* 227, *s.* 4. This statute seems intended to allow security as a substitute for payment or tender of damages. July 10, 1846, it was enacted (Laws of 1846, *c.* 335) that in case additional land should be needed for the construction of bridges or gates at highway crossings, upon certain proceedings had, the corporation should have authority to take the same, " after making previous payment or tender of the damages " assessed by the road commissioners. It was also provided that " any owner of land, or any railroad corporation dissatisfied with the damages assessed in any of the cases aforesaid, shall have the right to have the same assessed by a jury, as provided in the eighth section of chapter fifty-one of the Revised Statutes." Under this act both parties had the right of appeal, but there was no provision for giving security or allowing the land to be taken until after paying or tendering the damages. Thus the statute remained until the revision of 1867. The only instance in which an appeal from the assessment of land damages was given to a railroad corporation was when additional land was required for the construction of a bridge or gates at a highway crossing; and in that case the corporation could not enter upon and take the land until the damages were paid or tendered to the owner. In the case of laying out and building a new railroad, the corporation had no right of appeal from the assessment of damages; but in the event of an appeal by the land-owner, the corporation, upon giving security to pay the damages and costs that might be adjudged against it in the appeal, could enter and construct its road.

In the revision of 1867 material changes were made. Railroads were declared to be public highways, and the trustees, and others in whom any railroad is vested, public agents, so far as the security

and protection of the public rights and interests are concerned. Gen. Sts., c. 146, ss. 1, 2, 3, 5. In case the grantees of a railroad are unable to obtain deeds of the right of way, they may apply to the railroad commissioners for an appraisal of the damages to the landowner, and their report is final unless either party aggrieved appeals therefrom ; in which case the same proceedings are had as on an appeal from an award of damages by the county commissioners. Gen. Sts., c. 146, ss. 10, 17. "Damages awarded to any land-owner shall be paid or tendered to him, if known and resident in the state, before the proprietors shall enter on his land to make their road except by his consent. If the owner or his residence is unknown, or if he is a minor and has no guardian, or is not resident in the state, the damages awarded shall be paid to the state treasurer for his use, before the land can be rightfully entered upon. If an appeal is taken from the award of damages, the proprietors may enter upon and use the land, upon payment of the damages awarded to the owner, or, on his refusal of the same, to the state treasurer, and filing in his office reasonable security, to the satisfaction of either of the county commissioners, for the payment of any further damages and costs which may be awarded to the land-owner upon said appeal. No action shall be brought for damages before entry upon the land ; and if the location of the road shall be changed before the land is entered upon for the purpose of building the road, no damages shall be paid." Gen. Sts., c. 146, ss. 20–23. No change has been made since the General Statutes. The corresponding sections of c. 160, Gen. Laws, are identical with the foregoing sections of c. 146, Gen. Statutes.

The appraisal of damages for land taken for a railroad is similar to the asesssment of damages for land taken for a highway, and the mode of procedure on appeal is the same. But in the case of railroads either party may appeal, while in the case of highways the right of appeal is secured to the land-owner only. In neither case can the land-owner maintain an action for damages before entry upon the land, and in both cases payment or tender of the damages awarded is required before the land can be used for the construction of the road, except in certain cases where it is impracticable. The statute enables the railroad company to obtain a reduction of land damages on appeal, only by postponing the taking of the land until the appeal is determined. They can then enter upon payment of the amount of the damages and costs adjudged upon the appeal. If in case of an appeal they enter upon the land before the damages are finally determined, they must take it upon the statutory conditions of paying the sum assessed by the commissioners, subject to the contingency that the amount may be increased, and waiving the claim to any reduction that may be adjudged upon the appeal. Payment or tender of the damages is a prerequisite to the right of entry, and the amount assessed and tendered, when accepted in full or part payment, cannot be recovered.

back. The proprietors of a railroad cannot bar the land-owner's right of appeal by a payment or tender of the damages awarded; nor is an acceptance of the sum tendered a waiver of an appeal previously taken. If accepted, the tender operates as a payment *pro tanto*, and if the amount tendered and accepted was sufficient, it bars any further claim of damages, interest, and costs by the land-owner, and subjects him to a judgment for costs; if insufficient, he is entitled to judgment for the additional damages and costs awarded him upon the appeal. The plaintiff did not waive his appeal by accepting the sum tendered by the defendants as part payment of the damages claimed by him. An appeal is not waived by acceptance of a payment. The acceptance of a sum tendered on account of a claim only extinguishes it when the sum paid is all that the creditor is entitled to, or when it is accepted as being so. 1 Sutherland Damages 464; *Benkard* v. *Babcock*, 2 Robt. 175.

The contention of the defendants, that the legislature intended to require security merely in case of an entry by the proprietors of a railroad after an appeal is taken, is not sustained by the phraseology of *s*. 22, *c*. 147, Gen. Sts. (G. L., *c*. 160, s. 22). It is declared in unequivocal terms that the proprietors may enter upon payment of the damages awarded to the owner, and there is no ambiguity or uncertainty of expression. If the purpose was to provide for security merely (if such a course would be constitutional), it could have been accomplished by a slight change in the phraseology of *s*. 4, *c*. 227, Laws of 1845, for which *s*. 22 was substituted. That statute provided "that in case an appeal shall be taken from the decision of the commissioners, the corporation may, on giving or tendering to the land-owner security to the satisfaction of the road commissioners for the county that they will pay such damages and costs as may be adjudged against them on such appeal, immediately enter on the land to construct a railroad." If it had been the intention to provide for security merely in the revision of 1867, the only change necessary was to require the security to be filed in the office of the state treasurer, instead of giving or tendering it to the land-owner. Instead of making this verbal change, the commissioners of revision substituted *s*. 22, citing *s*. 4, *c*. 227, Laws of 1845, in the margin of their report marked with the letter *m*, denoting a material change. This fact furnishes strong evidence that it was the intention to require actual payment of the damages awarded, and not security merely, in case of an entry by the proprietors pending an appeal. The use of the land was transferred from the plaintiff to the defendants; and the statute was not designed to prevent all use of the money during the pendency of his appeal.

"In determining the value of lands appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the inquiry in such cases being, What, from

37*

their availability for valuable uses, are they worth in the market? As a general rule, compensation to the owner is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." *Boom Company* v. *Patterson*, 98 U. S. 403; *Amoskeag Company* v. *Worcester*, 60 N. H. 522, 526; *Munkwitz* v. *Railroad*, 63 Wis. In assessing the plaintiff's damages, the question was, What was the fair market value of the land at the time when it was taken by the defendants? In determining that question, whatever in its location, surroundings, and appurtenances contributed to the availability of the land for valuable uses, was proper evidence to be considered by the jury in estimating its salable character, and ascertaining its market value.

The instructions given on this point in this case were misleading. Details of circumstantial evidence were so enlarged upon and emphasized as to tend strongly to withdraw attention from the question of market value, and to present an exaggerated and erroneous view of the damages. By persons familiar with the law of the subject, the charge could perhaps be construed to authorize no departure from the measure prescribed by the fair market value of the land. But others would be likely to understand, from the instructions, that the damages could be expanded beyond that value by adding to its amount some of the elements comprised in it. As a new trial is necessary for the correction of this error, it is not necessary to inquire whether in other respects the charge was right. The plaintiff was not entitled to more than the land was worth in the market. Its value was the sum it could have been sold for, on a certain day, at a fairly conducted sale attended by bidders, each duly understanding all such matters of legal right, upon facts then known to him, as would induce him to buy, and affect his judgment in determining what price he would offer. *State* v. *James*, 58 N. H. 67; *Railroad* v. *State*, 60 N. H. 133, 140, 141; *State* v. *Doepke*, 68 Mo. 208; *Queen* v. *Railway Co.*, L. R. 9 Q. B. 134, 146.

*Verdict set aside.*

ALLEN and BINGHAM, JJ., did not sit: the others concurred.