## HUTZLER BROS. CO. *v.* REMINGTON PUTNAM BOOK COMPANY

[No. 81, October Term, 1944.]

*Decided January 30, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*S. Ralph Warnken* and *Charles Markell,* with whom were *Cook & Markell* on the brief, for the appellant.

*Michael F. DeLea* and *James M. Hoffa* for the appellee.

GRASON, J., delivered the opinion of the Court.

Appellee, on the 3rd day of August, 1944, filed its bill in the Circuit Court of Baltimore City, againts the appellant (both parties being corporations organized and existing under the laws of this State), in which is prayed for a temporary and permanent injunction "enjoining and restraining it (appellant), its agents and employees, from violating any of the terms of the contract entered into between The Remington-Putnam Book Company (appellee), a retailer, and Harper & Brothers, a publisher, and in particular restraining and enjoining it, its agents and employees, from advertising, offering for sale, or selling any of the books to any customer which are published by Harper & Brothers, and which have been price protected by Harper & Brothers, at a price

which is below the fair trade prices that are now in effect in the contract between your Complainant and Harper & Brothers"; and for general relief.

The bill, in substance, charges appellee is engaged in the business of retail sales of books, which is the principal source of its income, at 347 North Charles Street, Baltimore. The appellant operates, in Baltimore City, a large department store, one of its departments being a book department where books are sold at retail. By the Act of 1935, Chapter 212, the Legislature of this State enacted what is known as the "Fair Trade Act" and subsequently enacted amendments to the above law as contained in the following Acts: 1937, Chapter 239; 1939, Chapter 248; 1941, Chapter 330; and 1943, Chapter 803, Flack Code, 1939, Article 83, Sections 102-110, and 1943 Supplement, Sections 111-115. It is averred that pursuant to the provisions of the Act and amendments appellee entered into a contract with Harper & Brothers, a publisher. By this contract appellee agreed with the publisher that it would not, during the life of the contract, advertise, offer for sale, or sell, at less than the fair trade price, to any customer, any of the publisher's books for which the publisher had stipulated a minimum resale price. The fair trade price of the fair trade books shall be the list price (prices before discount) specified in the invoices sent to the bookseller, and all books published with a stipulated fair trade price will bear on the reverse side of the title page, figures representing the month and year of the publication and the presence of such figures constitutes notice to all booksellers that a fair price has been stipulated for each such book. There were other averments that need not be set out. The original contract between appellee and the publisher was exhibited with the bill. It is charged that appellant was aware of the fact that appellee had entered into this contract with the publisher and knew of the terms and conditions thereof, including the established fair trade price; but that notwithstanding, it repeatedly violated the terms of said contract, and during the lifetime of

the contract has been advertising, offering for sale, and selling books that are price protected by the terms of the contract at a 25 per cent. discount, contrary to the law of the State and in violation of the terms of this contract, and this notwithstanding that appellant has been requested to desist from the violations of the contract. It is averred that appellant entered upon a deliberate plan to violate the rights of appellee in this contract, and in accordance with said plan has written to Harper & Brothers a letter under date of July 12, 1944, as follows:

"As you doubtless know, since the final decision of the Court of Appeals in the case of *Remington-Putnam Book Company v. Schill,* certain Baltimore stores have ignored the fair trade prices on your publications and have made and advertised sales at 15 per cent. below the list price. In the current telephone directory both Schill's and Avon Book Shop have such advertisements.

"We are compelled to meet this price competition. Since in the Schill case your fair trade agreement has been held to be unlawful and unenforceable, it is no more enforceable against us than against Schill. Indeed the very fact that the agreement cannot be enforced against Schill necessarily terminates the agreement so far as we are concerned."

A copy of this letter is exhibited with the bill. The bill then charges that an agent of appellant, the head of its book department, notified appellee that on Tuesday, July 18th, they were going to cut prices on books and that pursuant to said plan appellant did, on Wednesday, July 19, 1944, publish an advertisement in the morning "Sun" of that day, advertising a book that the appellant knew was price protected at $2.25, which is a discount of 25 per cent. below the fair trade price, which book the appellant knew was subject to the terms of the contract. It is charged that by offering of discounts on price protected books appellant is using its book department as a loss leader and that the continuance of such action on its part will ultimately mean the absolute loss to appellee of its business; that the prices of books are set by

the publisher and that regardless of whether or not the books are sold at the stipulated resale price the publisher receives the same price for them regardless of the sale, so that by the continuance of such practice the one who is most severely affected is appellee. It is averred that the plan of advertising and selling books by appellant referred to is a deliberate and wilful act and is contrary to the spirit and letter of the provisions of the "Fair Trade Act" and constitutes unfair competition and results in severe damage to appellee in that the sale of said articles at a price less than stipulated in the contract tends to mislead the purchasing public into the belief that the prices charged by the appellee are exorbitant and excessive, and that the article forming the subject of said sale is worth much less than the amount demanded by appellee, pursuant to the provisions of the contract; and that such ads cause dissatisfaction among the public with the prices to be charged by appellee, pursuant to the terms of the contract, and further brings into disrepute the actual market value of the articles affected, which are the property of appellee and tends to, and thereby does depreciate the value thereof. It is further charged that it is not possible for appellee to ascertain the loss and damage suffered by it as a result of the unlawful acts of appellants, or that it will continue to suffer if the violations practiced by appellant are permitted to continue, and if the practice is continued will result in irreparable loss and damage to the appellee by the destruction of its business and good will, and a pecuniary compensation could not and would not afford appellee any adequate relief from the wrongs complained of and against which wrongs appellee has no adequate remedy at law. This bill was sworn to.

On the aforegoing bill, exhibits and affidavit thereto the Chancellor passed the following order: "On the aforegoing Bill of Complaint, Affidavit and Exhibits, it is this 3rd day of August, 1944, by the Circuit Court of Baltimore City Ordered that the Writ of Injunction be issued as prayed in said Bill of Complaint, on the filing by the

Complainant of a Bond in the penalty of One Thousand dollars, with security to be approved by the Clerk of this Court; but liberty is hereby reserved to Defendant to move for the rescinding of this Order, or for a dissolution of the Injunction to be issued as aforesaid, at any time after the filing of its Answer to the said Bill of Complaint, on giving to the Complainant herein five days' previous notice of such motion. And the Clerk of this Court is hereby directed to annex a copy of this Order to the Writ of Injunction."

The bond was filed by appellee, the injunction issued and served on the day the bill was filed. On August 5th appellant moved to dissolve the injunction and rescind the order therefore, which was overruled on the 7th. On the 29th of August appellant filed a combined demurrer and answer to the bill. On September 26th the Chancellor overruled the demurrer. On September 27, 1944, appellant appealed to this Court from: (1) the order of the Chancellor passed on the 3rd day of August, 1944, directing the issuance of the injunction; (2) the order overruling appellant's motion to dissolve injunction and rescind the order therefor; and (3) the order of September 26, 1944, overruling appellant's demurrer to the bill of complaint. This ruling we will first consider.

The demurrer asserts first that the bill does not state a case that entitles appellee to any relief against appellant. The specific ground for the demurrer is based on the decision of this Court in the case of *Schill v. Remington-Putnam Book Co.* (appellee in this case), decided April 8, 1943, 182 Md. 153, 31 A. 2d 467. Without quoting the demurrer, it may be stated it charges that the decision in that case established that the contract here involved is unlawful, and being unlawful it is not enforceable against the appellant. It also asserts that appellee's contract involved in the Schill case having been declared by this Court to be illegal, it was incumbent on the appellee to charge in the bill that it has ceased the unlawful practice which was condemned by the decision in that case. It further asserts that it was necessary for

the appellee to charge in the bill in this case that it was exerting all reasonable effort to see that its contract was observed by other book stores selling the publisher's books in the Baltimore area.

The appellant contends the contract in this case is tainted with the same illegality as the contract involved in the Schill case; and, therefore, the bill is bad because: **(1)** it does not allege that appellee has purged itself of its illegal practices; and **(2)** because it fails to aver it is using all reasonable means to cause other sellers of publisher's books in the Baltimore area to refrain from persisting in violating the contract here involved.

All the contentions of the appellant are based on its letter of July 12, 1944, to Harper & Brothers, and it is urged that the matters asserted therein must be taken as true for the purpose of the demurrer, because it is exhibited with the bill and is a part thereof. While matters contained in an instrument exhibited with a bill of complaint will, as a general rule, be taken as true, it can be said that a legal principle carried to the extreme would sometimes lead to injustice. This letter interprets the decision in the Schill case, and asserts that the illegal business relations which appellee had with Simon & Schuster, Incorporated, are the same business relations which appellee has with the publisher in this case. This is a conclusion, based on inference, and is not a fact. The assertion contained in the letter, that Schill and the Avon Book Shop are violating the contract here involved, necessarily is secondary and hearsay. What we have is a letter written to a party to a fair trade contract, containing the opinion of the writer with reference to the law, charging matters it asserts as true, in justification for violating the contract. When this letter is exhibited with the bill for the purpose of showing the intention to wilfully disregard and to violate the terms of the contract, upon demurrer to the bill, the writer of the letter says, that the legal inference and other matters contained in the letter must be taken as true, and, if taken as true, that the appellee's bill is bad. We

do not think any rule of law can be carried to this extreme. The letter is nothing more than a self-serving declaration. It admits its intention to commit the act, but justifies its commission. It is, in effect, a plea of confession and avoidance, and the matter of avoidance is, of course, self-serving. To adopt the contention of the appellant would be to hold that it could add the contents of this letter to appellee's bill and take advantage of such addition for the purpose of having the bill declared bad on demurrer. Manifestly this cannot be done. We are not impressed with the argument that once a violator of the law one is always a violator of the law. The contract in this case is dated the 23rd day of June, 1944. The parties to it are not the same as the parties to the contract involved in the Schill case. The decison in that case was handed down by this Court on April 8, 1943. The contractual relations between appellee and the publisher were, therefore, entered into more than one year after the decision in the Schill case. The law presumes that every man will conduct his business in conformity with the law and when a given transaction is decided to be unlawful, it is a fair presumption that the parties involved will reform their behavior to conform to legal standards. We think that there is a presumption of law that appelllee ceased its conduct condemned in the Schill case and that its contract and business relations with the publisher in this case are presumed to be in accordance with the law announced in the decision in that case. We find no legal infirmity apparent on the face of the bill, and there was no abuse of discretion by the Chancellor in granting the temporary injunction.

What we have said is directed to the legal question involved. The appellant is free to prove any facts that would legally justify the refusal of the relief prayed. From what we have said, it follows, there was no error in the Chancellor's action in granting the injunction without notice, nor in his refusal to quash the injunction and rescind his order directing its issue.

There was reference in the demurrer that the affidavit to the bill was defective. This affidavit does not appear in the record and as the matter was not referred to in the appellant's brief we deem it to be waived.

*Orders affirmed, with costs to appellee, and case remanded for further proceedings.*