MIRABILE, ET AL. *v.* STATE ROADS
COMMISSION OF MARYLAND

[No. 469, September Term, 1966.]

 

 

 

 

*Decided July 20, 1967.*

494

The cause was argued before HAMMOND, C. J., and MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ., and reargued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ., and RIDGELEY, P. MELVIN, JR., Associate Judge of the Fifth Judicial Circuit, specially assigned.

Argued and reargued by *Paul J. Feeley* for appellants.

Argued and reargued by *James S. Sfekas, Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General* and *John J. Schuchman, Special Attorney* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Prior to its taking by appellee (Commission) for highway purposes appellants (Mirabile) owned a 5.1 acre tract on Eastern Boulevard. The business conducted thereon was known as "Silver Lake Trailer Court." After 5 days of trial before Jenifer, J., in the Circuit Court for Baltimore County, the condemnation jury returned a verdict of $103,000 in favor of Mirabile. This appeal reflects his dissatisfaction with the result. The facts are not in dispute.

Mirabile bought the property in 1954. During the years 1956 through 1959 the site was prepared for use as a trailer park. Concrete pads to accommodate 45 trailers were installed. Beginning in 1962 and continuing through 1963, 1964 and 1965, the park was fully occupied. The land is zoned ML (Manufacturing, Light). In 1956 the zoning authorities granted the special exception required for use as a trailer park. The Bureau of Permits and Licenses on 28 December 1965 issued a permit to operate a trailer park for the year ending 31 December 1966. We shall assume similar permits were issued for the years 1963, 1964 and 1965. Baltimore County also collected from Mirabile a tax of $5.00 per month per trailer. Since the annual

tax would be $2,700 it will also be assumed that the trailer court was a matter of some importance to the county.

The Commission produced John Hocheder, an engineer, who testified that the trailer park was in violation of Section 414 of the Baltimore County Zoning Regulations. The maximum number of trailer sites legally available to Mirabile, he said, was but 28. He conceded, however, that if a variance had been granted by the zoning authorities, 45 sites could be placed on the property. He agreed that Mirabile's park had been approved by the County Health Department.

Clayton Reid, produced by the Commission as an expert real estate witness, said the highest and best use of the land would be for something in the ML classification other than a trailer park. He thought it was worth $51,800 on the basis of 32 trailer sites, $67,700 on the basis of 45 trailer sites, and $76,500 on the basis of comparable sales of other ML properties.

John Slowik qualified as an expert witness on behalf of Mirabile. He said it was his opinion that the highest and best use of the property was as a trailer park and that, as such, it was worth $166,500. Oddly enough, he also said it was worth $178,000 using the sales of comparable ML properties as a basis.

Mirabile produced another expert witness, Hugh Gelston, who valued the property at $153,000, using the comparable sales approach.

Mr. Slowik testified that "apparently" a variance allowing the use of 45 trailer sites had been granted by the zoning authorities. Asked if he was familiar with the contents of the zoning file in the Zoning Commission's office he said he had read it once but that when he went back to look at it more carefully it had disappeared. Asked if a variance had ever been granted he said he did not know.

Oliver Myers, on behalf of the Commission, testified that he was a planning assistant in the office of Planning and Zoning. He said file 3607X, pertaining to the Silver Lake Trailer Park, had been misplaced since 2 August 1965 when it was "signed out to Mr. John Slowik." Counsel for the Commission agreed, and so stipulated, that Mr. Slowik returned the file, although Mr. Myers could not recall what information in that regard may have been on the log sheet. Mr. Myers said he had with him "a

file copy of the Zoning Commissioner's [original] order, * * * and copies of the Board of Appeals' original order." When he was asked to read the copy of the Zoning Commissioner's order, counsel for Mirabile said he "would like to know where * * * [the] copy came from" and asked permission to approach the bench. What transpired at the conference at the bench does not appear in the record but immediately thereafter counsel for the Commission "withdrew the question." While one might assume, with some justification, that the trial judge indicated to counsel that he would sustain an objection to the reading of the file copies, there is no such objection nor any such ruling in the record.

Mirabile testified that in 1955 the county granted him a special exception to operate a trailer park and counsel stipulated that the county issued to him a permit to operate the trailer park for the year 1966. He was not asked by his own counsel whether a variance giving him the right to have 45 trailers was ever granted nor, oddly enough, was he asked such a question by counsel for the Commission. Mirabile seems to have given testimony before trial but whether this occurred in a pre-trial deposition pursuant to the Maryland Rules of Procedure or in the proceedings before the Property Review Board is not clear. Except for occasional references during the trial to the pages of some kind of a written transcript, the record does not contain a transcript of any such testimony. Mirabile also answered interrogatories directed to him by the Commission. No mention is made in either the interrogatories or the answers thereto of any action of the zoning authorities in respect of a variance.

At the conclusion of the evidence Judge Jenifer instructed the jury, in detail and at length, as to what was required of them. We have set forth the part of his charge which Mirabile contends is erroneous:

> "There has been evidence introduced relative to the sections of the Baltimore County Zoning Regulations dealing with trailer parks, namely Section 414.1 through 414.6 and the section regarding the granting of variances from the Regulations, namely Section 307. These Sections were read into evidence and photostats thereof have been filed as exhibits. Unfortunately,

the file in the Office of Planning and Zoning of Baltimore County relative to the granting of a special exception for the use of this property as a trailer park has been mislaid or lost and is unavailable. It is uncontradicted, however, that the property is zoned in a ML (Manufacturing, Light) Classification and that in the year 1956 a special exception was granted by the zoning authorities of Baltimore County for the use of the property as a trailer park. You have also heard the testimony of Mr. Mirabile as to the number of trailer sites which have been installed on the property and which have been in operation since the year 1963. You have also been informed that on December 28, 1965, a permit was issued by the Baltimore County Department of Permits and Licenses authorizing the use of said property as a trailer park as it then existed for the calendar year 1966. *It is your prerogative, therefore, to determine under all of the evidence which you have heard whether or not said trailer park was or was not being operated in violation of the Zoning Regulations on November 1, 1965, the date of the taking and the date of valuation in this case, and whether or not the owners of said trailer park were entitled to operate the same at variance with said Regulations and to consider these factors in determining the fair market value of the property as of said date. There is no evidence in this case, however, that the owners have been formally charged with any violation of the Zoning Regulations or that the owners applied for or were granted a legal variance under the provisions of the Zoning Regulations.* These elements should also be considered in arriving at the income from the property if you use the income approach in your valuation provided you find that the highest and best and most profitable use of the property was that of a trailer park." (Emphasis supplied.)

In the presence of the jury, counsel excepted to the language of the instructions set forth above, as follows:

"The Defendant objects to the instruction in regard
to the violation of the Zoning Regulations as to whether
a legal variance was granted or not, since there is no
evidence introduced by the Plaintiff pertaining to this
matter, that it was not granted nor that it was granted,
we feel, the Defendants feel, since there was no legal
evidence in regard to this matter, we object to that in-
struction on that ground."

Judge Jenifer, also in the presence of the jury, replied:

"* * * The Court feels that the obtaining of a vari-
ance is a matter of affirmative relief by a property
owner under the provision of Section 307 of the Regu-
lations, and that the property owner in this case de-
sired to have the jury consider the existence of a legal
variance as provided in that section, *the burden was on
them to prove that the zoning authorities had granted
such a variance* upon application of the owner, either
with their original petition for such exception or at
some other date thereafter. The Court does not feel
the mere absence of testimony that there was not a
legal variance granted by the appropriate zoning au-
thorities would permit the jury to consider that section
variance does, in fact exist." (Emphasis supplied.)

We think Mirabile was entitled, at the opening of the trial
in the court below, to the benefit of the presumption that the
law has been obeyed, that every man will conduct his business
in conformity with the law, that an individual intends to do
right rather than wrong and that he intends to do only what
he has a right to do. *Hutzler Bros. v. Remington Putnam,* 184
Md. 327, 334, 40 A. 2d 823 (1945); 31A, C.J.S., *Evidence,*
§ 134; 29 Am. Jur. 2d, *Evidence,* § 168. His land was in a zon-
ing classification which permits the operation of a trailer park.
The required special exception was granted by the zoning au-
thorities in 1956. It is certainly fair to assume that the county
government issued the necessary building permits for whatever
construction, above and below ground, took place and that the
work was inspected and approved by the proper authorities.

It is conceded that the permit to operate a trailer park was issued for 1966 and it would seem to follow that similar permits were issued for the preceding years. That the county has collected the not inconsiderable tax on each trailer is not disputed. The county government could hardly fail to know that there were 45 trailer sites on his land. In these circumstances Mirabile's use of his land must be presumed to be in compliance with the applicable rules and regulations and upon the Commission falls the burden of establishing a different situation.

The Commission, in its case in chief, was content to show that the zoning regulations, in the absence of a variance, permit no more than 28 trailer sites on Mirabile's land, and of this there seems to be little doubt. Mr. Slowik, during his cross-examination by counsel for the Commission, conceded that 45 sites exceeded the number allowed by the zoning regulations but he said this could be taken care of by a variance "and apparently has." Although Mr. Slowik was asked by counsel for the Commission if a variance had been granted (he said he did not know) nothing in this regard was asked of Mirabile. This seems odd, especially in light of the fact that the Commission had a year or more in which to investigate every facet of the land as well as the business thereon conducted. The record suggests there was a hearing before the Property Review Board. The Commission submitted interrogatories which Mirabile answered. Counsel for the Commission, at the trial below, referred to a transcript of testimony given by Mirabile. Whether the testimony was given at the Property Review Board hearing or at a pre-trial deposition is not clear. If the Commission knew, or suspected, that a variance had never been granted, Mirabile could have been called upon to admit either the granting of the variance or the denial of it. Maryland Rule 421. If he had taken the position that the variance had been granted he could have been examined at length as to the attendant circumstances either by way of interrogatories, pre-trial deposition, or on cross-examination at the trial in the court below. Its failure to do any of these things is hard to understand.

The production of Oliver Myers as a rebuttal witness and the failure to elicit any pertinent evidence from him completes the miscarriage of the Commission's attempt to establish any il-

legality in the use of Mirabile's property. As earlier noted, there was no objection to the attempted introduction of the file copies, there was no ruling by the trial judge, and there was no proffer of what the copies would show had they been admitted. Whether the copies would have been admissible as secondary evidence, assuming the laying of a proper foundation, we need not decide, since that question is not before us.

Since the Commission produced no evidence sufficient to support a finding by the jury that the presumption of legality has been rebutted, the instruction of the trial judge submitting the question to the jury was erroneous. The judgment of the trial court will be reversed and the case will be remanded for a new trial.

*Judgment reversed.*
*Case remanded for a new trial.*
*Costs to be paid by appellee.*