# IN THE MATTER OF THE TAX APPEAL
# OF FOODLAND SUPER MARKET, LTD.

## No. 4681.

SEPTEMBER 15, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND
CIRCUIT JUDGE LUM IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

This case is here on appeal by the State director of taxation, and a cross appeal by the taxpayer, from a tax appeal court judgment, which nullified a part, and sustained a part, of the director's assessment of additional tax against the taxpayer, for the years 1959 through 1963, under the general excise tax law, HRS c. 237.[1]

The taxpayer is Foodland Super Market, Ltd., which received payments totaling $206,707 during the years in question, under agreements variously called cooperative

---

[1] In this opinion, in referring to statutory provisions, chapter and section numbers of Hawaii Revised Statutes will be used instead of chapter and section numbers of Revised Laws of Hawaii 1955.

merchandising agreement, cooperative advertising agreement, contract for promotional services, and advertising and promotion allowance, all of which will hereafter be referred to collectively as cooperative agreements, or simply as agreements.

The question for decision is whether the taxpayer derived taxable gross income from the payments so received. HRS § 237-3 defines gross income as including "the value proceeding or accruing from the sale of tangible personal property, or service, or both, * * * without any deductions on account of the cost of property sold, the cost of materials used, labor cost, * * * or any other expenses whatsoever," but as excluding "cash discounts allowed and taken on sales."

Cooperative agreements are sales promotion devices evolved by manufacturers and other sellers of commodities in interstate commerce, with the provisions of sections 2(a) and 2(d) of the Clayton Act, as amended by the Robinson-Patman Act, in mind.[2] Section 2(a) prohibits price discriminations between purchasers of commodities of like grade and quality, unless justified by cost differentials resulting from differing modes or quantities of sales; and section 2(d) permits payments for services or facilities furnished in connection with sales, provided such payments are made available to competing purchasers on proportionally equal terms. In view of these statutory provisions, the agreements generally provide that the payments thereunder are not discounts but contributions toward costs of merchandising and allowances to defray promotional expenses, and that they are available to all purchasers in the same competitive field on proportionally equal terms.

---

[2] Hereafter, where reference is made to the Clayton Act, the reference is to the Clayton Act, 38 Stat. 730 (1914), as amended by the Robinson-Patman Act, 49 Stat. 1526 (1936).

In their format, the agreements are offers on the part of manufacturers and other sellers to make payments to retailers for their services in advertising and otherwise promoting the sales of the commodities listed therein. The retailers become entitled to the payments upon proof of performance of the required services. The services normally required are the inclusion of listed commodities in the retailers' newspaper, radio, and television advertisements, and occasional featuring of the commodities in their store displays, handbills, mail circulars, and reduced price sales. The amounts of payments are determined either on the basis of volume of sales of the listed articles within given periods or on the basis of specified advertising rates, such as national line rate for newspaper advertisements and standard station rates for radio and television advertisements.

This case arose out of the taxpayer's omission to report the payments it received in its general excise tax returns, and the assessment of additional excise tax upon the director's audit of the returns. The amount of assessment was $7,234.74, being 3½ per cent of $206,707. The tax was computed at the rate applicable to gross income from service business or calling, as provided in HRS § 237-13(6).

The taxpayer paid the assessment under protest and appealed to the tax appeal court. There, it contended that the payments were, in substance, trade discounts, equivalent to cash discounts, which are excluded from the definition of gross income in HRS § 237-3. It made the contention despite the fact that, in its books, it entered the payments as credits to the advertising account, thus treating them as income from performance of advertising services, and did not post them in the discounts earned account, which it also maintained. In this connection, it may be stated that section 2(f) of the Clayton Act pro-

hibits purchasers of commodities in the same competitive field from receiving price discriminations.

In support of its contention, the taxpayer relied on *In re Taxes, Kobayashi*, 44 Haw. 584, 590, 358 P.2d 539, 543 (1961), in which this court stated that "in determining tax liability it is fundamental that substance, rather than the form of the transaction, governs."

The tax appeal court ruled that the payments based on specified advertising rates were taxable as payments made to the taxpaper for advertising expenses it had incurred, and affirmed a part of the assessment predicated upon such payments. With respect to the payments based on volume of sales, it ruled that they were not taxable, stating that they were "more in the nature of discounts on the purchase price" than payments for performance of promotional services, and nullified so much of the assessment as was predicated on such payments.

We agree with the ruling on the payments based on advertising rates, but not for the reason stated by the court. In our opinion, payments were taxable as gross income to the taxpayer from service business or calling, and not as reimbursements of expenses. Service business or calling is defined in HRS § 237-7, as including "all nonprofessional activities engaged in for other persons for a consideration which involve the rendering of a service as distinguished from the sale of tangible property or the production and sale of tangible property." In performing the services which entitled it to the payments, there is no question that the taxpayer was engaged in nonprofessional activities for other persons for a consideration.

The general excise tax law does not tax reimbursements of expenses as such. Where services are performed for a consideration, what is taxed is the value proceeding or accruing from the services, without deduction of any expenses incurred in connection therewith. At the trial,

three specimen agreements, which provided for payments based on advertising rates, were stipulated in evidence. These agreements show that the payments were for advertising and other promotional services, and that the specified rates were merely measures for determining the value proceeding or accruing from the services. None provided that the payments be in the exact amounts of expenses incurred in the performance of services. The payments might very well have exceeded the expenses, for nothing in the agreements precluded the taxpayer from negotiating with the advertising media for rates more favorable to it than the specified rates.

We think that the court erred in its ruling on the payments based on volume of sales. Here too, it is our opinion that the payments were taxable as gross income to the taxpayer from service business or calling.

In arriving at the ruling, the court equated the payments to nontaxable cash discounts. It could have done so only upon a finding that the expenses incurred by the taxpayer, in comparison with the payments, were so insignificant that they could be ignored as de minimus, or, if that is too extreme a statement, that the payments were grossly in excess of, and did not have any discernible relationship with, the amounts of expenses incurred. The court did not have any evidence before it to support such a finding.

There was evidence that the taxpayer was paid $206,707 during the years 1959 through 1963. This figure was not broken down to enable a determination of the amounts paid on account of any particular agreement, and there was no evidence as to the amounts of expenses which the taxpayer incurred in performing any particular agreement or even in performing all of the agreements.

There was also evidence that under some agreements a single advertisement within a quarter entitled the tax-

payer to be paid on the basis of the quantity of its purchase of the advertised commodity during the quarter. It appears that the court concluded from this evidence that the expenses incurred by the taxpayer were minimal. The conclusion was unwarranted because there was no evidence as to the amounts expended by the taxpayer in placing the advertisements under such agreements and the amounts paid to it by reason of its doing so. Without such additional evidence, the conclusion would be pure conjecture.

Any conclusion based on conjecture would be particularly unwarranted here because of the presumption, which exists in the absence of evidence to the contrary, that all persons act in compliance with the law and not to circumvent it. *Mirabile* v. *State Roads Comm.,* 247 Md. 492, 231 A.2d 693 (1967). The conclusion that the expenses were minimal would be tantamount to a finding that the agreements were cloaks to grant price discriminations proscribed by the Clayton Act, and that the manufacturers and other persons who made the payments and the taxpayer who received them participated in such price discriminations. Under the Clayton Act price discriminations exist where there is no "discernible relationship between the amounts paid and the cost or reasonable value of the services rendered." *In the Matter of General Foods Corp.,* 52 F.T.C. 798, 823 (1956).

Pertinent here is the decision of the Federal Trade Commission in *In the Matter of Lever Brothers Co.,* 50 F.T.C. 494 (1953). In that case the government filed a complaint against Lever Brothers charging it with violation of Section 2(d) of the Clayton Act, and advanced three contentions in support of the complaint, the last of which was "that the amounts received by the respondent's customers were disproportionate to the cost of advertising furnished by them in that purchasers of large quantities

of soap products received sums which were grossly in excess of the cost of the advertising which they furnished, whereas purchasers of lesser quantities received much lesser amounts in relation to the cost of the advertising they furnished." The commission dismissed the complaint on the ground that there was no evidence from which it could be found that payments to any customers were in excess of their cost or value, and stated, at page 505:

"As to the third contention that there is a lack of proportionality because allowances are paid on a per case basis with no relationship to the advertising required to be placed, the evidence in this record is such that no finding whatsoever could be made on this point. All the record shows is that various newspapers charge different rates; that customers use different newspapers; that varying amounts of advertising are used by different customers to comply with their contracts with respondent; and that lineage rates are different as between customers even though same newspapers might be used. Furthermore, the allowances paid are for feature sales of which advertising is a part. Consequently, there is no comparative basis in this record which might be used to determine the relationship between the allowances paid and the advertising required to be placed, and the deficiencies of this record are such as to be fatal to any finding on this point."

We hold that, under the record in this case, the payments to the taxpayer, regardless of the basis upon which their amounts were determined, were what they purported to be and what the taxpayer treated them to be in its books, namely, payments for the performance of advertising and promotional services, and thus constituted taxable gross income.

The judgment of the tax appeal court is affirmed in

part and reversed in part, and remanded with instructions to enter a judgment to affirm the director's assessment in its entirety in accordance with this opinion.

*Tany S. Hong,* Deputy Attorney General (*Bert T. Kobayashi,* Attorney General, and *Henry I. Kuba,* Deputy Attorney General, with him on the briefs), for appellant, cross-appellee.

*Barry Chung* (*Fong, Miho, Choy & Robinson* of counsel) for appellee, cross-appellant.