ACTING DIRECTOR, DEPARTMENT OF FORESTS
AND PARKS ETC. *v.* WALKER ET AL.,
TRUSTEES

[No. 28 (Adv.), September Term, 1974.]

*Decided May 31, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Michael P. Crocker* on motion to dismiss for appellees.

*Carl Harrison Lehmann, Special Attorney,* on motion to dismiss for appellant.

SMITH, J., delivered the opinion of the Court.

The State of Maryland, acting through the Department of Forests and Parks, under the authority of Maryland Code (1957, 1970 Repl. Vol.) Art. 66C, § 372, filed a petition in the Circuit Court for Baltimore County on April 20, 1972, to condemn land of the appellees "for the purposes of establishing, expanding and completing the State Park known as Gunpowder State Park and other public purposes . . . ." [1] The "other public purposes" apparently included an armory for the Maryland National Guard. On November 28, 1973, a Baltimore County jury returned an inquisition in favor of the appellees in the amount of $1,224,000. Judgment absolute on the inquisition was entered on December 20, 1973. We shall here grant the motion of the appellees for dismissal of the State's appeal.

This case does not arise under the so-called "quick take"

---

[1] By Chapter 470 of the Acts of 1973 the power under § 372 now rests with the Department of Natural Resources. By Chapter 348, § 3, of the Acts of 1972 "all rights, powers, duties, obligations, and functions heretofore conferred upon or exercised by the Department of Forests and Parks [were] transferred to . . . the Department of Natural Resources." All references in the Maryland Code to the Department of Forests and Parks are "deemed to mean the Department of Natural Resources." See Code (1957, 1973 Cum. Supp.) Art. 66C, § 343.

statutes authorized by Maryland Constitution Art. III, §§ 40A-40D. Therefore, under Code (1957, 1973 Repl. Vol.) Art. 21, § 12-103, title to the land is to be deemed taken "upon payment of the judgment and costs by the plaintiff pursuant to Subtitle U of the Maryland Rules." It is elementary that without title the State, under Maryland Constitution Art. III, § 40, has no right to enter upon private property for construction purposes. That section is specific in its language:

> "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being *first* paid or tendered to the party entitled to such compensation." (Emphasis added.)

The limited right of entry granted by Art. 21, § 12-112 for engineers and others for surveying, etc., was held in *Mackie v. Town of Elkton*, 265 Md. 410, 290 A. 2d 500 (1972), to not go so far as to permit the geologic investigations there contemplated which "entail[ed] core drilling to ascertain the condition of the strata of underlying rock and the digging of large, deep pits with a backhoe to assay the quality and availability of fill material for the earthen embankments of [a] proposed reservoir."

In this case, notwithstanding what was conceded at oral argument to be lack of any constitutional or statutory authority for such action, the State presented to a judge a petition for a right of entry, alleging " [t]hat unless the State of Maryland, its agents or contractors are permitted to enter on the aforesaid property for proposed construction, the contract will have to be relet which in all probability will result in great expense to the State of Maryland." An order for such right of entry was passed *ex parte* in advance of the trial of the condemnation case. A motion to strike that order was filed by the appellees, but not pressed when the jury brought in what the appellees regarded as "a fair compromise verdict." The exact date does not clearly appear, but the parties are in agreement that at a time subsequent

to the return of the jury's verdict the State moved in on this land. It has felled numerous trees, graded the land to suit its needs, and proceeded with the erection of an armory for the National Guard.

Under Art. 21, § 12-108 (a), " [a]ny party to a condemnation case may appeal from a final judgment or determination to [this Court] in the manner prescribed by the Maryland Rules." This the State has done. Under subsection (d) of the same section, " [i]f plaintiff desires possession pending appeal, it may make payment of the award pursuant to Subtitle U of the Maryland Rules," a bond being required if the condemnor is other than the State of Maryland or one of its subdivisions or instrumentalities. No payment has been made.

The appellees have moved to dismiss this appeal on the "grounds that (a) the appeal is moot and (b) that the appeal, under the principles of waiver and estoppel, is not allowed by law."

The State points to the fact that the land in question was leased by the appellees to the United States of America and that pursuant to that lease a license was granted by the Secretary of the Army to the State for use and occupancy as a military reservation "for year-round training and support of the Maryland Army National Guard," all of which it says authorizes its action. The license cannot grant to the State rights in the land greater than the licensor holds. The State contends that § 5 of the lease authorizes its action. That section reads:

> "5. The Government shall have the right, during the existence of this lease to attach fixtures, and erect structures or signs, in or upon the premises hereby leased, which fixtures and structures, or signs, so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government within ninety (90) days after the effective date of the termination of this lease. Within said described ninety (90) days

the Government shall also grade the surface of such land described in this lease where excavations had been made or fills or embankments have been constructed, either during possession under this or former leases of said premises and made by the Government, so as to bring the contour of the ground as near as possible as it existed before such excavation or fill or embankment shall have been made."

We do not discern in that provision any authority for the State's action in commencing construction of the armory.

The right of an American citizen to be secure from the expropriation of his lands by the sovereign without just compensation is a fundamental right. In *Hammond v. State Roads Comm.*, 241 Md. 514, 217 A. 2d 258 (1966), this Court held that the right of the property owner to just compensation for the taking of his land required that the State pay interest on a judgment entered in a condemnation proceeding.

We do not have the benefit of the opinion of the trial court, but a situation similar to the one at hand was presented in *Wilmington & Susq. R.R. v. Condon*, 8 Gill & Johns. 443 (1837). There, a railroad company sought to condemn land in Cecil County. It took exception to the confirmation of the inquisition in the case and asked that it be quashed on a number of grounds connected with what it regarded as an improper jury verdict. This Court dismissed an appeal from the action of the trial court on the ground that "a special limited jurisdiction [was] given to the county court, from the decision of which no appeal lies to any other tribunal." The significant factor, however, is that it is reported:

" [I]t being admitted by the *Rail Road Company*, that subsequent to the date of the said inquisition, the said company had occupied the land therein condemned, and had been engaged in constructing their road over and upon it, the county court (*Chambers, Ch.J., Hopper and Eccleston, A.J's*) for

this reason refused to hear any testimony in support of the caveator's allegations, and confirmed the said inquisition." *Id.* at 448.

Chief Judge Chambers, to whom reference was there made, was a member at that time of this Court, under the system then prevailing.[2] Moreover, he was succeeded on this Court by Judge Eccleston, one of his colleagues in that decision in the trial court.[3]

This case represents the reverse of the situation in *Shapiro v. Md.-Nat. Park Comm.*, 235 Md. 420, 201 A. 2d 804 (1964). The property owner in that case took the appeal after having accepted payment of the sum returned in the jury's verdict. The appellee moved to dismiss the appeal on the ground that an appellant cannot take the inconsistent position of accepting the benefits of a judgment and then challenge its validity on appeal. Judge Hammond said for the Court:

"This is the general rule. *Stewart v. McCaddin,* 107 Md. 314, 319; *Bethlehem Steel Co. v. Mayo,* 168 Md. 411, 413; 30 C.J.S. *Eminent Domain* Sec. 345, p. 23; 4 Am. Jur. 2d *Appeal and Error* Sec. 258; Annotation, 169 A.L.R. 985. There is an exception to this rule 'where the right to the benefit received is conceded by the opposite party, or where the appellant would be entitled thereto in any event.' *Bethlehem Steel Co. v. Mayo,* just cited, at p. 413 of 168 Md. (a compensation case). See also *Lewis v. Lewis,* 219 Md. 313 (alimony); *Petillo v. Stein,* 184 Md. 645 (workmen's compensation).

"Although the general rule usually has been applied in condemnation appeals, the rationale of

---

**2.** Chief Judge Bond in *The Court of Appeals of Maryland, A History* at 143 (1928), characterized Judge Chambers as a "strong" judge.

**3.** This Court was reorganized as a result of the Constitution of 1851. Its judges were vested with responsibility for appellate work only. This was continued in the Constitution of 1864. The Constitution of 1867 returned to the pre-1851 formula of having the Court composed of the chief judges of the various circuits, styled as "districts" in the Constitution of 1776 as amended in 1805. Judge Eccleston was elected to the Court in 1851 from the Eastern Shore counties.

the exception to the rule (which this Court has recognized in compensation and divorce cases) has been accepted by strong courts where the only issue was the amount of the award. The Court of Appeals of New York, in a discriminating analysis of the opinions, held in the case of *In Re Courthouse in City of New York*, 111 N. E. 65, that where appeal of the condemnee does not raise any question of the right to condemn or the right of the condemnor to retain the land condemned or any other question except the fairness or correctness of the amount of the award, which an appellant accepted (but not as payment in full), the appeal will be entertained. See also *Chicago Great Western R. Co. v. Kempler* (Mo.), 166 S. W. 291, 293-294; *Low v. Concord RR* (N.H.), 3 A. 739, 742.

"In the appeal before us the property owners do not challenge the right of the Commission to condemn or raise any other question except the size of the jury's award. The Commission concedes the right of the appellants to the award and the appellants did not take payment of the award in full satisfaction of the jury's inquisition. We accept the reasoning and the conclusion of the Court of Appeals of New York in the *In Re Courthouse* case as sound and deny the motion to dismiss the appeal." *Id.* at 424-25.

There are a number of Maryland cases which hold that an injunction will issue to prevent the entry upon and taking of land without just compensation being *first* paid, or tendered, to the party entitled. *See, e.g., Baltimore Belt R.R. v. Lee*, 75 Md. 596, 604, 23 A. 901 (1892); *Amer. Tel. & Tel. Co. v. Pearce*, 71 Md. 535, 18 A. 910, 7 L.R.A. 200 (1889); *Piedmont & C.R.R. v. Speelman*, 67 Md. 260, 10 A. 77 (1887); *New Cent. Co. v. George's Creek Co.*, 37 Md. 537, 566 (1873); *Mayor of Frederick v. Groshon*, 30 Md. 436, 445-46, 96 Am. Dec. 591 (1869); and *Western Md. R.R. v. Owings*, 15 Md. 199, 204, 74 Am. Dec. 563 (1860).

In *Concannon v. State Roads Comm.*, 231 Md. 87, 93, 188 A. 2d 700 (1963), this Court cited *Philadelphia v. Commonwealth*, 284 Pa. 225, 130 A. 491 (1925), on the issue of when the right to just compensation vests in the landowner. In that case, the Pennsylvania court said:

> "Where an actual taking occurs under the power of eminent domain such as invests the condemnor with title, and gives to the landowner a vested right of compensation, the former cannot be permitted to discontinue the condemnation proceedings without the latter's consent." *Id.* at 234.

A party may waive his right of appeal. For instance, in *Rocks v. Brosius*, 241 Md. 612, 217 A. 2d 531 (1966), Judge Barnes said for the Court:

> "The right to appeal may be lost by acquiescence in, or recognition of, the validity of the decision below from which the appeal is taken or by otherwise taking a position which is inconsistent with the right of appeal. See *Bowers v. Soper*, 148 Md. 695, 130 Atl. 330 (1925) involving an appellant who sought the distribution of funds in accordance with an audit and attempted to appeal from the order finally ratifying the auditor's report and account. See also *State, use of Shipley v. Walker*, 230 Md. 133, 186 A. 2d 472 (1962) and *Turner v. Washington Suburban Sanitary Commission*, 221 Md. 494, 158 A. 2d 125 (1960) in which we held that if a party accepted the amount of a remittitur, he could not on appeal challenge the order granting the remittitur. It is also well settled that an appeal will not lie from a consent decree. *Mercantile Trust Co. v. Schloss*, 165 Md. 18, 166 Atl. 599 (1933)." *Id.* at 630.

To like effect *see Kneas v. Hecht Company*, 257 Md. 121, 123-25, 262 A. 2d 518 (1970).

In the matter of interpreting a statute, this Court said in *District Land v. Wash. S.S.C.*, 266 Md. 301, 292 A. 2d 695 (1972):

"It is well established that where two constructions of statutory language are possible, the Courts will prefer the construction which will result in the legality and effectiveness of the statutory provision being construed, rather than to adopt a construction which would make such provision illegal and nugatory. *The Swarthmore Co. v. Kaestner,* 258 Md. 517, 525-27, 266 A. 2d 341, 345-46 (1970); *Groh v. County Commissioners of Washington County,* 245 Md. 441, 445-46, 226 A. 2d 264, 267 (1967)." *Id.* at 312.

In *Deems v. Western Md. Ry.,* 247 Md. 95, 113, 231 A. 2d 514 (1967), Judge Oppenheimer observed for the Court that " [w]hen the construction of a statute is before us, it is well established law that the enactment will be construed so as to avoid a conflict with the constitution whenever that course is reasonably possible."

Relative to an individual's actions, Judge McWilliams observed for the Court in *Mirabile v. S. R. C.,* 247 Md. 492, 231 A. 2d 693 (1967):

"We think Mirabile was entitled, at the opening of the trial in the court below, to the benefit of the presumption that the law has been obeyed, that every man will conduct his business in conformity with the law, that an individual intends to do right rather than wrong and that he intends to do only what he has a right to do. *Hutzler Bros. v. Remington Putnam,* 184 Md. 327, 334, 40 A. 2d 823 (1945); 31A, C.J.S., *Evidence,* § 134; 29 Am. Jur. 2d, *Evidence,* § 168." *Id.* at 498.

In *Lerch v. Md. Port Authority,* 240 Md. 438, 457, 214 A. 2d 761 (1965), Judge Oppenheimer spoke of the "strong presumption that public officers properly perform their duties," citing *Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 433, 178 A. 250 (1935), and *Union Trust Co. v. State,* 116 Md. 368, 372, 81 A. 873 (1911).

To interpret the act of the State here as intending to pursue an appeal would be to believe that State officials

meant to defy the constitutional provision and to do that which they were forbidden to do, namely, to take the property of the appellees without *first* having secured to them just compensation. We prefer to believe that when the State's agents entered upon the property of the appellees, felled the trees, graded the land and began construction, it was the intent of those agents of the State vested with responsibility relative to this project to do that which was legal, rather than that which was illegal, and, therefore, it was intended to waive the right of appeal.

*Appeal dismissed; appellant to pay the costs.*