## SPENCER *v.* SPENCER

[No. 333, September Term, 1969.]

*Decided June 2, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Howard E. Goldman,* with whom were *Melbourne & Goldman* and *Grant, Harris, Huddles & Rosenblatt* on the brief, for appellant.

*Arthur Dale Leach,* with whom were *Paulson & Leach* on the brief, for appellee.

PER CURIAM.

We have here a rather dreary chronicle of domestic strife which began when the parties were married in 1942. The appellant is a physician in general practice in rural Montgomery County. He is 49; the appellee is 47.

282

They have three children, Sheldon 23, Sheryl 18, and Deborah 12. The two girls live with their mother who left the marital abode on 4 June 1968. In her bill of complaint, filed two weeks later, there are allegations of "extreme cruelty" which the appellant denied. The case came on for trial before J. M. Mathias, J., in April 1969. After four days of testimony Judge Mathias dismissed appellant's cross-bill, granted the appellee a divorce a mensa and awarded to her the custody of the two girls. He ordered also the payment of alimony, support for the children, counsel fees and costs. In his opinion he said, in part:

"The plaintiff [appellee] testified that her husband began physically to abuse her in 1951 and such abuse has steadily grown worse, especially in the year or so before the separation. She described in detail five particular instances, which occurred on February 25, February 28, March 11, April 26 and May 28, all in the year 1968. We will not go into minute detail, but the wife's testimony was that on these occasions her husband had brutally assaulted her, forcing her to submit to sexual intercourse against her will, on one occasion kicking her with his knee in the spine and on the last occasion getting a scissors grip with his legs on her head and forcing her face into the bed covers, to the point where she feared that she would be suffocated.

"Although the wife was not able to produce eyewitnesses to each of these incidents, her daughter Sheryl, a neighbor child Terry Schrock, and a good friend Mrs. Irma Brown, furnished sufficient corroboration to satisfy the requirements of Article 35, Section 4. The requirements for corroboration are not so strict as they used to be before the repeal of Rule S75.

"The husband and his son, although they admitted having seen bruises on the plaintiff, generally denied any vicious assault upon her. The

husband himself admitted that he had grabbed her and held her; and blamed the dissension between them on her alleged uncooperative attitude.

"There was considerable testimony to show that over a period of years the husband had compelled the wife to operate a frugal household, causing her to resort to the humiliating experience of appearing at her husband's medical office to obtain money for household necessities. Strangely, this testimony is unrebutted. There was another occasion according to the testimony when the wife, in order to obtain five dollars for needed household expenses, accepted her husband's dare to stand on her head.

"There was testimony by the wife, corroborated by the thirteen-year old daughter Debra, that on February 28th the husband in a fit of anger almost ran his wife down in the driveway of their house, and when she frantically threw herself on the rear of the car and held on for dear life he drove off at a mad pace in utter disregard of the obvious danger to his wife's safety.

"The husband did not completely deny the occurrence but testified that he had tried to get his wife to get off the rear of the car, and when she refused he had driven off at a modest speed in order to call upon a patient nearby who was in need of his services.

"In this case the court as the trier of the facts must judge the credibility of the witnesses; and we may do so not only from what they say but also from what we observe from their demeanor on the stand and in the courtroom. In the face of the convincing testimony of Mrs. Spencer and of her daughter Debby, we can not believe Doctor Spencer's version of what happened on that

occasion. We accept the testimony of the plaintiff and her daughter."

\* \* \*

"We find that the plaintiff has proved her Bill of Complaint and that she was justified in leaving the marital domicile on June 4, 1968, in order to protect her health, safety and self-respect."

\* \* \*

"It will be difficult to heal the dissension that exists and the bad feeling that exists between the father and his daughters; and of course this feeling was not helped at all by this trial. I could see how hurt the children were when the father testified from the stand that he thought they were telling untruths. I do hope, however, that as time goes on the wounds will heal and all parties will seek the aid of their religion in trying ing to help the wounds to heal, so that the daughters will have a father as well as a mother."

Having examined the voluminous testimony with great care we are unable to say that Judge Mathias' decision was clearly erroneous, although we might well have reached a different result had we been the trier of facts. *Styka v. Styka,* 257 Md. 464 (1970).

Appellant insists that his wife's testimony lacks the degree of corroboration required by Code, Art. 35, § 4 and, to be sure, his argument in this regard is not without merit, but when considered in the light of the corroborative evidence quantitatively appraised in *Stewart v. Stewart,* 256 Md. 272 (1969), and *Soles v. Soles,* 248 Md. 723 (1968), it falls somewhat short of persuading us that the conclusion of the trial judge ought to be set aside. *Cf. Smith v. Smith,* 257 Md. 263 (1970) ; *Murphy v. Murphy,* 248 Md. 455 (1968).

> *Decree affirmed.*
> *Costs to be paid by the appellant.*