## ORLANDO A. BARSALLO *v.* JACQUELINE R. BARSALLO

[No. 724, September Term, 1972.]

*Decided August 8, 1973.*

The cause was argued before MORTON, CARTER and MENCHINE, JJ.

*H. Alan Young*, with whom was *D. Robert Cervera* on the brief, for appellant.

*Dennis M. Ettlin*, with whom were *Brown & Sturm* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Orlando A. Barsallo (husband), filed a petition in the Circuit Court for Montgomery County requesting modification of a prior custody decree so as to permit his eight (now nine) year old daughter (Rosalia) to visit him one month a year at his home in Panama City, Panama. The petition was denied. He contends that the Chancellor erred: (1) in considering matters that were neither raised in the pleadings nor adduced in evidence, and (2) in denying the relief sought as not being best for the welfare, benefit and interest of the child.

Pursuant to the authority conferred by Md. Rule 1026 g, the parties, with the approval of the lower court, prepared and signed a statement of the case in lieu of the pleadings and evidence. In accordance with the Rule the statement shows how the questions to be determined arose and were decided. It also sets forth so much of the facts proven and sought to be proven as are essential to a decision of the questions to be determined by this Court. Under the Rule the statement supersedes, for the purpose of this appeal, all parts of the record other than the Chancellor's order and the Master's report which are annexed to the statement. The statement, order and report show the following.

## FACTS ALLEGED AND PROVEN

The parties were married April 15, 1963 and divorced on June 6, 1967. One child, Rosalia, was born of the marriage on April 12, 1964. The divorce decree awarded custody of the infant daughter of the parties (then three years of age) to

the appellee, Jacqueline R. Barsallo (wife). The decree further provided, *inter alia*, that the husband should have the right to visit with the child every Sunday afternoon. On alternate Sundays he was privileged to take her from the wife's home during visiting hours. The husband, who was living in Maryland at the time of the decree, fully exercised his visitation rights and complied with the decree until August 1969. At that time, being a citizen of the Republic of Panama, he returned to his native land to accept a position as an attorney with the Panamanian government. By reason of these changed circumstances, he was unable to take advantage of his visitation privileges. Since moving to Panama in 1969, he has visited his daughter each summer in Maryland. On January 6, 1972, he filed a petition to have the decree modified so as to allow his daughter to visit him at his home in Panama City, Panama, one month each summer during her vacation from school. Pursuant to the petition, the court passed a show cause order and the wife answered, objecting to any change in the visitation privileges. The petition and answer were duly heard by the Domestic Relations Master. Three witnesses, including each of the parties and the wife's mother, testified at the hearing. Thereafter the Master filed his report which was excepted to by the husband. The Chancellor overruled the exceptions and adopted the Master's findings of fact and the reasons for his recommendation that the husband's petition be denied.[1]

## FACTS SOUGHT TO BE PROVEN

According to the "statement of the case" the husband's testimony showed the following: (1) that since moving to Panama, he has remarried and is presently living with his thirty-two year old wife in a two bedroom apartment; (2) that if the child were to visit with him, she would have her own bedroom; (3) that he planned to arrange his vacation to coincide with his daughter's thirty day visit to Panama; (4)

---

**1.** Pursuant to a cross-claim of the wife filed at the same time as her answer to the petition, the Chancellor increased the child support from $100 per month to $120 per month. This part of the order, however, is not a subject of this appeal.

that the daughter would visit her paternal grandfather's farm outside of Panama City and have an opportunity to play with the animals raised there; (5) that the child would be able to play with her cousins of the same age; (6) that letters introduced in evidence written by the daughter to him expressed her love for her father and members of his family; (7) that the child would have an opportunity to be with her father and his family in their surroundings uninterruptedly for a thirty day period; (8) that the child would be exposed to a new language and culture and thus enabled to broaden her education; (9) that the child, according to both her parents, was very bright; (10) that his trips to the United States pose a financial burden and when he does see his daughter it is for only a few hours at a time; (11) that according to the wife's testimony she characterized him as being a good and honorable man and encouraged contact between the child and himself; and (12) that he would return the child after the thirty day visitation period had ended.

The "statement" also showed that the wife opposed the petition for the following reasons. (1) She had some concern that the husband would not return the child at the expiration of the thirty day period. She could not, however, give any instances which indicated the husband's intention not to return the child, except that in 1965 he had stated he would like to have the child reared by his mother in Panama. (2) The husband could not afford an adult companion to accompany the child to and from Panama. (3) She had apprehension concerning the child's religion inasmuch as she was Jewish and the husband was Catholic. (4) The child has a problem with her eyes that requires her to see a doctor every six months.

## MASTER'S REPORT AND RECOMMENDATION

The Master, in his report, found that the husband's net monthly income was $532.80 and that the earnings of his present wife amounted to $350 a month. He also recognized that the husband had submitted an itemized statement of his monthly expenses in the total sum of $747. In evaluating

the wife's opposition to the petition, he rejected her reasons (1), (3) and (4) as enumerated above. In so doing he found under (1) that she had failed to establish, to his satisfaction, any present intention of the husband to keep the child in Panama and have her reared by his mother. In this connection he found that the wife's characterization of the husband as a "good and honorable" man negated the likelihood of any such intention. In dealing with (3) he found that the wife's apprehension in regard to the child's religion was not justified. In this connection he pointed out that the husband testified he believed it best for the child that she be raised in the Jewish faith of her mother. In disposing of (4) he found that the child's eye condition would not prevent her from visiting her father because there were adequate medical services available in Panama. In regard to (2) he refused to take judicial notice of the fact that airlines take special care of unescorted minors traveling with them.[2]

The basis for the Master's recommendation that the husband's petition be denied is reflected in the following portion of his report:

> " * * * The flight will be made through the Miami International Airport, to connect with a flight from there to Panama City, Panama. Necessarily, the latter leg of the flight will be over water (Caribbean). In the opinion of the Master, there would be certain hazards attendant with such a flight for so young a girl [eight years of age]. The language in Panama is Spanish, and there was no showing at the hearing * * * that the child is conversant with that language. There could be problems develop in this regard in the event the child was not met at the airport by her father or some member of his family able to speak English. In addition, when one is considering the welfare of the child, it is almost impossible to overlook the possibility of air piracy or hijacking of planes,

2. We shall discuss this action of the Master later in the opinion under the subheading "Findings of Fact."

especially, those which have recently occurred on the runs to Florida and Miami. Not long ago, an air passenger was killed in an exchange of gunfire between agents of the government and air pirates. Indeed it seems that neither the airlines nor the Federal Government have been able to put a halt to these acts in this country.

"* * * [T]he Master is of the opinion that the child is too young and immature at this point in time to be permitted to undertake the travel alone. As the child grows older, and travel conditions become more secure, the matter could well be reconsidered, perhaps in two or three years."

I

## FINDINGS OF FACT

In speaking of the review by this Court of matters involving child custody, which ordinarily includes the right of visitation, we said in *Widdoes v. Widdoes*, 12 Md. App. 225 at 233, 278 A. 2d 100:

"* * * In our review the clearly erroneous rule applies to the chancellor's factual findings. But for the reasons set out in *Sullivan v. Auslaender*, 12 Md. App. 1, we must exercise our best judgment in determining whether the conclusion as to custody the chancellor reached on those facts was the best one, best, that is, for the welfare, benefit and interest of the child."

See also *Kirstukas v. Kirstukas*, 14 Md. App. 190, 193-194, 286 A. 2d 535.

The appellant contends that the Chancellor erred in considering the possibility of air piracy, hijacking, and the killing of passengers on flights to Miami. It is conceded that these facts were neither alleged in the pleadings nor established by the evidence.[3] The appellee (wife) claims,

---

**3.** Facts which may be judicially noticed are not required to be pleaded or proven. See *Lichtenberg v. Joyce*, 183 Md. 689, 700, 39 A. 2d 789; *Macht v. Hecht Co.*, 191 Md. 98, 102, 59 A. 2d 754.

however, that such facts were properly considered by the Chancellor because they were matters of which he could take judicial notice. In discussing the matter of judicial notice, the Court of Appeals said in *Hettleman v. Frank*, 136 Md. 351, 363, 110 A. 715:

> "* * * 'Courts should take [judicial] notice of whatever is or ought to be generally known, within the limits of their jurisdiction, for justice does not require that Courts profess to be more ignorant than the rest of mankind,' * * *."

See also *Johnson v. State*, 8 Md. App. 28, 34 (footnote 3), 257 A. 2d 756. In 29 Am. Jur. 2d, Evidence § 22, it is stated:

> "Generally speaking, in order that a fact may be judicially noticed, it must be a matter of common and general knowledge, it must be well and authoritatively settled, and not doubtful or uncertain, and it must be known to be [such] within the limits of the jurisdiction of the court. * * * "

For the purpose of this opinion, we shall assume that it is a matter of common knowledge within the jurisdiction of the lower court that there has been air piracy, hijacking, and a passenger killed as a result thereof, on flights to Miami, and therefore that such facts could be judicially noticed by the Chancellor. We nevertheless hold that he was clearly in error in concluding that these incidents in and of themselves were legally sufficient to establish that similar happenings would likely occur on a flight on which Rosalia would travel to Miami. There was no evidence adduced to show how frequently these happenings occurred, the percentage which they bore to the total flights or air passengers traveling to Miami over any given period, nor what, if any, preventive measures the airlines and/or the federal government have taken, since the occurrences, to prevent a repetition of them. In the absence of such additional evidence, the incidents, standing alone, are legally insufficient to support a rational inference that the occurrences would probably be repeated.

We also conclude that any finding by the Chancellor that

flying over the Caribbean Sea was a probable danger to the child's safety was clearly in error. There was no evidence to establish that such flights subjected the passengers to any more danger to their safety than flights over land. Clearly such an increase of danger is not "well and authoritatively settled" nor "a matter of common knowledge" within the jurisdiction of the lower court. It therefore could not be judicially noticed. (See 29 Am. Jur. 2d, Evidence § 22, *supra.*)

Furthermore, the Chancellor's finding that the child's inability to speak and understand Spanish presented some likely danger to her safety in the event her father failed to meet her at the Panamanian airport was clearly in error for two reasons. Firstly, there was no evidence sufficient to establish as a probability that her father would not meet her or have some one who could speak English do so in the event of his inability. Secondly, the fact that Spanish is the national language of Panama does not establish the probability that there was no personnel connected with the airport, which accommodates planes flying from the United States, who could understand English. The Chancellor, in assessing dangers to the child by reason of the flight, is required to deal in probabilities, not bare possibilities.

In regard to the wife's reason (2), heretofore mentioned, for opposing the petition, we hold that the Chancellor was clearly in error in failing to take judicial notice, as requested by the appellant, of the fact that all airlines which accept unescorted minors as passengers take special care of them. We think this is a uniform practice among the airlines that is a matter of common and general knowledge in the jurisdiction of the lower court. In addition, such a practice was required by law and in the absence of evidence to the contrary, it is presumed that the airlines were complying with the law.[4]

---

4. The Court of Appeals, in speaking of the care owed by a common carrier to its passengers, said in *St. Michelle v. Catania,* 252 Md. 647, 651, 250 A. 2d 874 that it was required "to employ the highest degree of care for their safety consistent with the nature of the undertaking." See also *Jacobson v. Julian,* 246 Md. 549, 559, 229 A. 2d 108. In applying this definition to the care required in the case of an obviously pregnant

## II

## *CONCLUSIONS*

In view of the rulings in I, we shall evaluate the Chancellor's decision on the basis of considerations other than the dangers which he found the child might be exposed to by reason of her air travel to and from Panama.

In *Radford v. Matczuk*, 223 Md. 483, 164 A. 2d 904, the Court of Appeals, in discussing the criteria for determining visitation rights of a parent with a minor child whose custody has been awarded to another, said at page 488 (quoting from 2 Nelson, *Divorce*, § 15.26 (2d ed.)):

> " '* * *A parent's right of access to his or her child will ordinarily be decreed unless the parent has forfeited the privilege by his conduct or unless the exercise of the privilege would injuriously affect the welfare of the child, for it is only in exceptional cases that this right should be denied. * * *' "

In *Myers v. Butler*, 10 Md. App. 315, 270 A. 2d 341, this Court said at 317-318:

> "* * * The right of a parent to visit his child in the

---

passenger, the Court held in *B. & O. Railroad Co. v. Leapley*, 65 Md. 571, 576-577, 4 A. 891 that special care was required for her over and beyond that required for a passenger not under a disability. In 14 Am. Jur. 2d, Carriers § 693, it is stated:

"As a rule, a common carrier is required to devote more attention and care to *an infant passenger* than to an adult passenger. Whether or not this is termed a high degree of care, in the technical sense, it is generally held that this relationship *demands a special care* proportionate to the age of the child and its ability, or lack of it, to care for itself. * * *" (emphasis added)

See also Annotation: 28 A.L.R. 1035.

It seems clear from the definition of the duty owed by a carrier, as set forth in *St. Michelle, supra,* that the degree of care required for the safety of an 8-9 year old infant "consistent with the nature of the undertaking" would be greater than that required for a mature adult. We think therefore that the duty to provide *special care* for Rosalia was an obligation imposed by law on the airlines and that the Chancellor should have concluded that the carrier was presumed to comply with the law in the absence of evidence to the contrary. See *Mirabile v. State Roads Comm.*, 247 Md. 492, 498, 231 A. 2d 693; *Hutzler Bros. v. Remington v. Putnam*, 184 Md. 327, 334, 20 A. 2d 823; 31A C.J.S., *Evidence*, § 168.

custody of another, at reasonable times and under reasonable conditions, is an important one, but not absolute. * * * The cases emphasized that there should be *reasonable access* to the child upon such terms as the Chancellor may prescribe, and that he retains jurisdiction to vary or modify such an order. * * *" (emphasis added)

The wife cites *Sullivan v. Auslaender, supra*, in support of her opposition to allowing Rosalia to visit her father in a foreign country. Her reliance is misplaced. In *Sullivan*, the husband was requesting that he be permitted to have continuous custody of the two children of the parties for three years in Israel and then return them to the custody of the wife in the United States for a three year period. That case involved a changing custody arrangement for several years at a time. In the instant case the matter involved is the privilege of having the child visit with her father for one month only during each year. In *Sullivan*, we pointed out that the loss of the supervisory power of the lower court over an infant by its removal from the State was a factor to be considered in determining the right of a parent to take the child to a foreign country for three years. We made it clear, however, that the fact of the child's removal in and of itself was not a controlling consideration. In so holding, we said in *Sullivan, supra* at 19:

"* * * We do not suggest for an instant that if the best interests of the children required it that they should not be sent to Israel in the care of their father. 'We merely say that in a close case, such as the case before us, *one consideration* is that the Court may exercise much more effective control when custody is kept in the State.' *Butler v. Perry, supra* [210 Md. 332, 123 A. 2d 453] at 342." (emphasis added)

In *Andrews v. Andrews*, 242 Md. 143, 218 A. 2d 194 the Court of Appeals approved the right of a mother residing in Maryland to have her two children, who resided with their

father in Mexico, visit with her during the summer months. The children were ten and eleven years of age.

Applying the rationale of *Radford v. Matczuk, supra,* and *Myers v. Butler, supra,* to the record before us, we conclude in the exercise of our independent judgment that the interest and welfare of the child will be best served by allowing her to visit with her father during the month of August each year at his home in Panama. We think that through these visits the child will benefit by being with her father without interruption during his vacation and hers. We also believe that as a nine year old child, she will likely absorb some of the culture and language of her Panamanian ancestry and thus broaden her education. Furthermore, she will be given the opportunity to become acquainted with her paternal relatives. In addition, to deny this request of the father in the circumstances of this case might well result in his being denied any meaningful visitation privileges with his daughter. We therefore hold that the petition should be granted.

> *Order denying the appellant's petition reversed.*
> *Case remanded for further proceedings not inconsistent with this opinion.*
> *Appellant to pay costs.*