Judith Levang SILSETH, formerly Judith
Levang, Plaintiff and Appellant,

v.

Leroy LEVANG, Defendant and Appellee.

Civ. No. 8920.

Supreme Court of North Dakota.

Jan. 3, 1974.

Donald C. Holand, Fargo, for plaintiff and appellant.

Stetson & Jones, Lisbon, for defendant and appellee.

PAULSON, Judge.

This is an appeal from a district court judgment which placed custody of the minor child, Jill Lynn Levang [hereinafter Jill], in her natural father, Leroy Levang [hereinafter Leroy], and which denied the petition of the natural mother, Judith Levang Silseth [hereinafter Judith], to gain custody of Jill.

Leroy and Judith were married on September 7, 1968, when they were 21 and 18 years of age, respectively. Their child, Jill, was born on June 26, 1969. On February 15, 1972, Judith obtained a divorce from Leroy on the ground of irreconcilable differences; they had been separated since May of 1970.

Just prior to their divorce, Judith and Leroy entered into a property and custody settlement agreement which placed the custody of Jill with Leroy, with visitation rights in Judith. The agreement also provided that Judith could have the agreement reopened and reviewed at a later date for possible alteration of custody. On November 28, 1972, Judith petitioned to amend the judgment and decree of divorce so as to regain custody of Jill. A hearing on that petition was held on December 15, 1972, and the district judge ordered that an investigation be made of all the parties involved and their families. The attorneys for both Judith and Leroy had previously stipulated that such an investigation could be made and the results used as an aid by the district court in determining custody of Jill.

As previously stated, Judith and Leroy separated in May of 1970. Judith left Leroy and moved to Fargo with Jill to seek employment. Two weeks later Judith returned to her parents' farm and left Jill there while she looked for work. About a week later Leroy took Jill from Judith's parents' farm to his parents' farm, where he also resided.

Judith worked in Fargo for six months and then returned to her parents' farm for five months before enrolling in a secretarial course at the Wahpeton State School of Science for one semester. During this time Jill was with Judith only for some visits; the remainder of Jill's time was spent with Leroy at his parents' farm.

Judith remarried on August 18, 1972, and Leroy remarried on November 8, 1972. The Fargo Area Social Service Center, which conducted an investigation of the parties and their homes, reported that Judith and Leroy, and their respective new

spouses, would be adequate parents. The Social Service Center also reported that Jill had lived with her father, Leroy, for most of her life and had developed a strong relationship with her paternal grandparents during the time she lived in their home with Leroy. For these reasons, the Social Service Center representative expressed the belief that a change in custody would detrimentally affect Jill in these relationships.

On March 16, 1973, the district court held that Jill should remain in the custody of Leroy, with visitation rights in Judith. The district court stated the reasons for its decision to be that Leroy took the initiative and took Jill into his home, that Jill had lived almost continuously with Leroy, that Judith took quite a while to petition for the custody of Jill, that Jill had a close relationship with her paternal grandparents, and that removal from the home of Leroy would not be in the best interests of Jill and would probably disrupt her life.

Judith is appealing this judgment and claims the district court erred in not awarding her custody under § 30–10–06 of the North Dakota Century Code, which provides:

"*Rules for appointing.*—In appointing a general guardian or in awarding the custody of a minor, the court is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, and if the child is of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question; and

"2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years, it should be given to the mother, and if it is of an age to require education and prepa-

ration for labor or business, then to the father."

Judith claims that all other things were equal and that the best interests of Jill would be served by placing Jill in the custody of her mother, Judith, and that the court improperly relied upon the recommendations of the social worker.

The district court's power with respect to custody in divorce actions is provided for in § 14–05–22, N.D.C.C., which provides:

"*Custody of children.*—In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time."

■ The criterion used by the district courts in their custody determinations is to award custody in accordance with what is in the best interests of the child or children. Sabot v. Sabot, 187 N.W.2d 59 (N.D.1971); Ficek v. Ficek, 186 N.W.2d 437 (N.D.1971); Noakes v. Noakes, 185 N.W. 2d 486 (N.D.1971); Guldeman v. Heller, 151 N.W.2d 436 (N.D.1967).

■ As stated earlier in this opinion, Judith maintains that she should be awarded custody because Jill is very young and should therefore be with her mother. This claim is based on § 30–10–06, N.D.C.C. In Guldeman v. Heller, *supra*, and in Ferguson v. Ferguson, 202 N.W.2d 760 (N.D. 1972), we quoted from 27B C.J.S. Divorce § 309(4); at pages 461–463:

"The general rule as to preference to be given to the mother in the award of custody of young children, or so-called 'tender years doctrine,' is not, however, inflexible and applicable in every case merely because the mother has not been shown clearly unfit; and it has been said to be merely an aid to the court or one facet of the basic principle that the best interests and welfare of the child are the controlling considerations. The

general rule is qualified by the requirement that other things be equal, and, whether or not such rule has been recognized or affirmed by statute, the mother of a child of tender years is not entitled to its custody as a matter of law. Accordingly, such a child may be awarded to the father, in the discretion of the court, where the circumstances of the case require it for the child's best interests . . . ."

■ In the instant case, therefore, the district court was not bound by § 30–10–06, N.D.C.C., if all other things were not equal. The district court stated the things done by Leroy that impressed the court. In so stating these actions of Leroy in its decision, the district court made it evident that it thought all other things were not equal: the fact that Leroy took the initiative in taking Jill into his home, that Jill was with Leroy and her paternal grandparents for some time and formed a strong relationship with them, and that Judith waited for some time to try and gain custody of Jill—all point to the fact that all other things were not equal.

In addition, the district court had at its disposal the report of the Fargo Area Social Service Center which stated that a change in Jill's custody might have a disrupting effect on her life. As stated in the record, this was also the belief of the trial judge. There was nothing improper about the district court's use of the investigation report as an aid in the court's decision, because both of the parties involved had agreed that such a report could be made by the social service center and used by the district court. The district court did not rely solely upon that report, but formed its own opinion based on the report as well as on many other factors.

■ The aversion to changing custody when a child has been living happily in one place for a substantial period finds support in 24 Am.Jur.2d, Divorce and Separation § 820, at page 932, where it is stated:

". . . where young children have been placed in one home and have remained there for a substantial period of time and the situation seems satisfactory, there is a reluctance to uproot the children from familiar surroundings and place them in a strange home with a parent who hardly knows them."

In addition, in the case of Scripter v. Scripter, 190 Neb. 317, 208 N.W.2d 85 (1973), in its syllabus, it was held:

"An original decree fixing custody of minor children will not be modified unless there has been a change in circumstances indicating that the person having custody is unfit for that purpose or that the best interests of the child require such action."

Further, the court, in *Scripter, supra* 208 N.W.2d at 86, stated:

"We do not believe it is in the best interests of a child to unnecessarily change custody and bandy the child back and forth between parents. Stability is desirable."

■■ In Ferguson v. Ferguson, *supra* 202 N.W.2d at 761, in paragraph 3 of the syllabus, we held:

"Findings that a party to a divorce action has committed adultery, that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other, and that a particular division of property between the parties to a divorce action is equitable, are appropriately dealt with on appeal as findings of fact. Consequently, a review of these findings is limited to a determination of whether or not they are 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."

This rule is also followed in other jurisdictions. For example, in Cornwell v. Cornwell, 244 Md. 674, 224 A.2d 870 (1966), the trial court ordered a change in the custody of two daughters from the father to the

mother. On' appeal to the Court of Appeals of Maryland [Maryland's highest court], the decision was affirmed by using the following language:

> ". . . a review of the record before us indicates that the chancellor was not clearly erroneous in awarding custody of the children to the mother." 224 A.2d at 872–873.

This language clearly shows that the "clearly erroneous" rule was applied to an award of child custody. For cases to the same effect see Spencer v. Spencer, 258 Md. 281, 265 A.2d 755 (1970), and Franklin v. Franklin, 257 Md. 678, 264 A.2d 829 (1970).

In Morris v. Morris, 439 S.W.2d 317 (Ky.1969), the Court of Appeals of Kentucky [Kentucky's highest court], affirmed a trial court's judgment that denied a divorced husband's motion for a transfer of custody of his two children from his ex-wife to him. The Court of Appeals stated in *Morris, supra* 439 S.W.2d at 318–319:

> "On review of the entire evidence heard by the chancellor who ' * * * saw the witnesses and is in better position to evaluate the testimony than is this Court' [citation omitted] we find no basis for holding that his decision was clearly erroneous. [Citation omitted.] That is the test."

See also Combs v. Combs, 471 S.W.2d 715 (Ky.1971).

Both the *Cornwell* and *Morris* cases applied the "clearly erroneous" rule to child custody determinations. The civil rule applied in Kentucky in the *Morris* case is Kentucky Civil Rule 52.01, which is identical to our own Rule 52(a), North Dakota Rules of Civil Procedure.

From our review of the evidence in this case we are unable to say that the district court's award of custody was clearly erroneous.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and VOGEL, J., concur.

TEIGEN, Judge (concurring specially).

I concur in the result reached by the majority.

However, since I feel that Rule 52(a), N.D.R.Civ.P., is being misapplied with respect to our review in certain divorce matters, I feel compelled to lodge a protest at this point.

In the case of Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972), we held, at paragraph 3 of the syllabus:

> "Findings that a party to a divorce action has committed adultery, that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other, and that a particular division of property between the parties to a divorce action is equitable, are appropriately dealt with on appeal as findings of fact. Consequently, a review of these findings is limited to a determination of whether or not they are 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."

In support of this conclusion we cited cases from three jurisdictions with a rule similar to our Rule 52(a): Spencer v. Spencer, 258 Md. 281, 265 A.2d 755 (1970); Franklin v. Franklin, 257 Md. 678, 264 A.2d 829 (1970); Meredith v. Meredith, 91 Idaho 898, 434 P.2d 116 (1967); Ingram v. Ingram, 385 S.W.2d 69 (Ky. 1964).

Upon further analysis of these and other cases from these and other jurisdictions, I have become convinced that no other jurisdiction has so severely limited the scope of review in divorce matters, as a continuing proposition.

In Spencer v. Spencer, *supra,* the Maryland Court of Appeals considered only the correctness of a decree granting divorce. No separate issues were raised or consid-

ered as to custody, alimony, child support, counsel fees and costs. In that case the decree was affirmed, the Court of Appeals stating at 258 Md. 281, 265 A.2d at 756:

> "Having examined the voluminous testimony with great care we are unable to say that Judge Mathias' decision was clearly erroneous, although we might well have reached a different result had we been the trier of facts."

In Franklin v. Franklin, *supra,* some confusion may have been caused by the following statement, again made by the Court of Appeals, at 264 A.2d at 832:

> "While we agree with Judge Melvin's findings of fact, we could not disturb them even if we did not agree, since they are not clearly erroneous."

In 1970, by legislative enactment, initial appellate review of divorce matters was transferred from the Maryland Court of Appeals to the Maryland Court of Special Appeals. Laws of Maryland 1970, Chapter 99.

Subsequently, in the case of Sullivan v. Auslaender, 12 Md.App. 1, 276 A.2d 698, 700 (1971), the Court of Special Appeals wrote an exhaustive opinion on the "clearly erroneous" rule as it relates to custody matters in divorce cases, reaching the following conclusion:

> "So while we recognize the importance of the opportunity by the chancellor to see and hear the witnesses in custody cases and the reluctance of the Court of Appeals and this Court to disturb his findings of fact, we are not bound by the strictures of the clearly erroneous rule, but rather exercise our best judgment, in determining that 'ultimate' question of 'transcendent' and 'paramount' and 'controlling' importance, whether the *conclusion* of the chancellor was the best one for the welfare, benefit, and interest of the child." [Emphasis supplied.]

And in Widdoes v. Widdoes, 12 Md.App. 225, 233, 278 A.2d 100, 104 (1971), the same court stated:

> "* * * In our review the clearly erroneous rule applies to the chancellor's *factual findings.* But for the reasons set out in Sullivan v. Auslaender [supra] * * *, we must exercise our best judgment in determining whether the *conclusion* as to custody the chancellor reached on those facts was the best one, best, that is, for the welfare, benefit and interest of the child." [Emphasis supplied.]

Thus the Maryland Court of Special Appeals appears to have held that the determination that the interest of a child will best be served by awarding custody to one or the other parent is a conclusion, rather than a finding of fact. Whatever characterization is given to that determination—finding of fact, ultimate fact, or conclusion—it nevertheless was held to be subject to review in Maryland. The rule continues to be applied. Kirstukas v. Kirstukas, 14 Md.App. 190, 286 A.2d 535 (1972); Barsallo v. Barsallo, 18 Md.App. 560, 308 A.2d 457 (1973). Application of the rule appears not to have been reversed by the Court of Appeals.

I cannot but conclude that the reliance this court placed on Maryland case law in support of our rule in *Ferguson* was misplaced.

Likewise, our reliance on Idaho cases appears to have been misplaced. In Saviers v. Saviers, 92 Idaho 117, 438 P.2d 268, 271 (1968), which was an appeal from a divorce decree, the Idaho Supreme Court set forth in its opinion twelve "pertinent" findings of fact from the amended findings of fact of the lower court, and concluded:

> "These facts are amply supported by competent and substantial evidence and will not be disturbed on appeal. I.C. § 13-219, and the numerous cases annotated thereunder; Rule 52(a) I.R.C.P.; Meredith v. Meredith [supra] * * *" .

Among the findings of fact set forth in the opinion is the following, at 270:

"IX

"Defendant is a fit and proper person to have the care, custody and control of the children of the parties and it is for the best interests of the children that he be granted such care, custody and control."

If Idaho followed the rule which we attributed to it in *Ferguson,* the Idaho court's inquiry should logically have ended at that point. Yet, at 438 P.2d at 274 we find the court reviewing the custody determination:

" * * * the question of custody is, in the first instance, committed to the discretion of the trial court; and its determination of that issue will not be disturbed on appeal in the absence of an *abuse of that discretion.*" [Emphasis supplied.]

And at 272, the court reviews alimony provisions within the following rule:

"The allowance of alimony is, in the first instance, committed to the sound discretion of the trial court, and, although reviewable on appeal, such discretion will not be interfered with in the absence of a *manifest abuse* thereof. [citation omitted]."

A number of other states which have adopted the "clearly erroneous" test of Rule 52(a), nevertheless continue to hold that in child custody matters the trial court is vested with a broad discretion, and that its judgment will not be disturbed on appeal unless the trial court abused that discretion. Richardson v. Richardson, 211 Kan. 172, 505 P.2d 690 (1973); Kansas Statutes Annotated, § 60–252; Roussel v. State, 274 A.2d 909 (Maine 1971); Field and McKusick, Maine Civil Practice, Rules of Civil Procedure, Second Edition, Rule 52(a); Hyder v. Hyder, 505 P.2d 390 (Colo.App.1972); Colorado Revised Statutes, Vol. 1, Rules of Civil Procedure, Rule 52(a); Orezza v. Ramirez, 19 Ariz.App. 405, 507 P.2d 1017 (1973); Arizona Revised Statutes Annotated, Vol. 16, Rule 52(a); LaBelle v. LaBelle, 207 N.W.2d 291 (Minn.1973); Minnesota Statutes Annotated, Vol. 27A, Rules of Civ.Proc.— Dist.Cts., Rule 52.01.

In support of the majority's contention that our scope of review is limited by Rule 52(a), they cite two Kentucky cases in addition to Ingram v. Ingram, *supra*: Morris v. Morris, 439 S.W.2d 317 (Ky.1969), and Combs v. Combs, 471 S.W.2d 715 (Ky. 1971). Upon review of all reported Kentucky divorce cases since the *Combs* case, I find nine in which review was stated in terms of "abuse of discretion",[1] seven which refer to the clearly erroneous rule,[2]

---

1. Of these cases, three review the trial court award of custody of children: Griffith v. Allen, 472 S.W.2d 253, 254 (Ky.1971), Dowell v. Dowell, 490 S.W.2d 478, 480 (Ky. 1973), Sharp v. Sharp, 491 S.W.2d 639, 642 (Ky.1973); three consider the adequacy of the alimony award: Grimes v. Grimes, 472 S.W.2d 477, 478 (Ky.1971), Budig v. Budig, 481 S.W.2d 95, 97 (Ky.1972), Bell v. Bell, 494 S.W.2d 517 (Ky.1973); two consider the question of whether alimony should have been periodic rather than in a lump sum: Dahlenburg v. Dahlenburg, 479 S.W.2d 606, 607 (Ky.1972), Chinn v. Chinn, 480 S.W.2d 157 (Ky.1972); and one considers the adequacy of child support payments: Bradley v. Bradley, 473 S.W.2d 117, 118 (Ky.1971).

2. These cases consider whether the trial court assigned the correct value to property:

Moore v. Moore, 477 S.W.2d 792, 794 (Ky. 1972), Beggs v. Beggs, 479 S.W.2d 598, 601 (Ky.1972); whether the parties had orally modified child support provisions of their divorce decree: Ruby v. Shouse, 476 S.W.2d 823, 825 (Ky.1972); whether the findings were sufficient to support the alimony award made: Robinson v. Robinson, 474 S.W.2d 355 (Ky.1971); whether the evidence supported the property division made: Walden v. Walden, 486 S.W.2d 57, 59 (Ky.1972); whether a husband's net worth was as low as that determined by the trial court: Purdom v. Purdom, 498 S.W.2d 131, 133 (Ky. 1973); whether the divorce should have been granted to the other party: Bentley v. Bentley, 500 S.W.2d 411, 412 (Ky.1973).

and two which refer to both.[3] These cases appear to demonstrate some concern for distinguishing between factual and conclusionary findings.

Between the rule in these states on the one hand, and North Dakota on the other, lies the Alaska rule which appears to attempt a compromise between the two positions. In Carle v. Carle, 503 P.2d 1050, 1052 (Alaska 1972), the Alaska Supreme Court stated:

"In our jurisdiction it is well established that the trial court is possessed of broad discretion to determine where custody should be placed. We will disturb the trial court's resolution of custody issues only if convinced that the record shows an abuse of discretion, *or if controlling* findings of fact are clearly erroneous." [Emphasis supplied.]

I have found that to whatever extent other states may have departed from the "abuse of discretion" test to the "clearly erroneous" rule, they have done so in halting and uncertain steps. I cannot but conclude that the test which we devised in paragraph 3 of the syllabus in *Ferguson,* a part of which appears in the majority syllabus here in paragraph 5, is no longer appropriate. I would continue to hold the "clearly erroneous" rule applicable to "findings that a party to a divorce action has committed adultery"; however, I believe that a finding "that a particular division of property between the parties to a divorce action is equitable" or a finding "that the best interest of a child of the parties to divorce action would be served by awarding custody of the child to one party as opposed to the other" are discretionary matters with the trial court, and that our review should be a review for abuse of that discretion.

KNUDSON, Judge.

I join with Judge TEIGEN in his special concurrence.

3. These cases consider the modification of child support and custody provisions: Eversole v. Eversole, 474 S.W.2d 685, 686 (Ky. 1971); and the award of custody and finding

of fitness of one parent to raise the child: Simmons v. Simmons, 479 S.W.2d 585 (Ky. 1972).