Catherine M. RUDEL, Plaintiff
and Appellee,

v.

Arthur G. RUDEL, Defendant
and Appellant.

Civ. No. 9593.

Supreme Court of North Dakota.

May 22, 1979.

Lamb, Schaefer, McNair & Larson, Fargo, for defendant and appellant; argued by Bruce H. Carlson, Fargo.

Wheeler, Wolf, Wefald & Peterson, Bismarck, for plaintiff and appellee; argued by Robert O. Wefald, Bismarck.

ERICKSTAD, Chief Justice.

The defendant, Arthur G. Rudel, appeals from a judgment in a divorce action contending, among other things, that the court inequitably divided the marital estate. We affirm.

The action was commenced by Catherine M. Rudel by service of a summons and complaint dated January 10, 1977. An interim order was issued by the district court on January 11, 1977, providing in part for payments of temporary support by Arthur to Catherine. The case was tried in the District Court of Foster County on September 7, 1977, and a memorandum opinion was issued by the court on August 17, 1978. The findings of fact, conclusions of law and order for judgment were executed on August 29, 1978. The judgment was dated August 29, 1978, and notice of the entry of the judgment was served upon Arthur by mail on the 14th of September, 1978.[1]

"II.

"The plaintiff shall receive as her own property the West Half of the Northwest Quarter and the North Half of the Southwest Quarter of Section 35, Township 148, Range 74, Sheridan County, North Dakota. The defendant will receive as his own property the East Half of the Southeast Quarter of Section 2, Township 148, Range 70, Wells County, North Dakota.

"III.

"The net marital estate is hereby divided between the parties as follows:

| | Arthur | Catherine |
|---|---|---|
| Contract for Deed net value | $ 60,000 | |
| Home Quarter | 85,000 | |
| Machinery & equipment net value | 93,000 | |
| Savings Net | 16,000 | |
| Retirement Plan | 18,000 | |
| Grain | 125,000 | |
| 1977 Buick | | $ 7,500 |
| Trailer | 10,000 | |
| Personal Property | 2,500 | 2,500 |
| ASCS Payments | 18,552 | |
| Share of Sunflower Crop Proceeds | · 6,900 | |
| Other Debts | (40,000) | |
| Cash Settlement | (40,000) | 40,000 |
| 7% Real Estate Mortgage to Catherine | (152,476) | 152,476 |
| "TOTALS | $202,476 | $202,476 |

"IV.

"The defendant is to pay to the plaintiff the cash settlement of $40,000.00, plus seven percent interest from and after the date of trial of September 7, 1977, within six weeks following the entry of judgment and decree and notice thereof.

"V.

"The defendant is to further pay to the plaintiff the principal sum of $152,476.00 through the execution of a promissory note with interest on the unpaid balance at the rate of seven percent (7%) simple interest per annum from the date of trial of September 7, 1977, payable in fifteen (15) annual payments of principal and interest subject to a final balloon payment in the amount of the unpaid principal balance due and owing plus accrued interest on the death of defendant or on his retirement from farming. Said promissory note will be secured by a first mortgage on all of the real property owned by the defendant. Said promissory note and mortgage are to be executed by the defendant and delivered to the plaintiff's attorney within the same 6-week period allowed for the payment of the cash settlement.

The parties were married on January 10, 1951, and thereafter engaged in farming near the city of Fessenden. During the course of the marriage, they acquired approximately 690 acres of real property, of which 160 acres were received as a gift from Catherine's family, and of which 80 acres were received as a gift by Arthur from his family. Of the balance of the land, 160 acres had been owned by Arthur's family but were acquired by purchase, and 290 acres of the land were purchased on a contract for deed in 1973, with a balance to be paid thereon at the time of the trial of approximately $40,000.

In addition to the acquisition of the real estate, substantial personal property was acquired during the marriage.

Arthur apparently does not object to the values placed upon the property by the court, nor does he object to the mode of dividing the property which permits him to continue to farm the land subject to his payment of a cash settlement of $40,000 within six weeks of the service of the notice of entry of judgment, an installment note of $152,476 bearing interest at the rate of seven percent in 15 annual payments, and cash of $3,162.50 with interest within a similar six-week-period; but he does object that the trial court excluded from the division of the property, the 160 acres acquired by the parties from Catherine's family, and the 80 acres of land acquired by Arthur from his mother.

This issue is phrased by Arthur in this language: "Did the trial court err in ordering the property division and settlement while under the assumption that 'equitable' and 'equal' are synonymous?"

He asserts, and he is correct, that in dividing property in connection with a divorce, the trial court is required to make an equitable distribution of the real and personal property of the parties. *See* Section 14 05 24, N.D.C.C. He also points out that there is no rigid rule as to what is an equitable distribution and that the determination of what is equitable depends upon the particular facts and circumstances of each case. *Fleck v. Fleck,* 79 N.D. 561, 58 N.W.2d 765 (1953); *Nicholson v. Nicholson,* 126 N.W.2d 904 (N.D.1964).

He further asserts that our court has said on a number of occasions that there is no requirement that a property division be equal to be equitable. *Hultberg v. Hultberg,* 259 N.W.2d 41 (N.D.1977); *Haugeberg v. Haugeberg,* 258 N.W.2d 657 (N.D.1977); and *Grant v. Grant,* 226 N.W.2d 358 (N.D.1975). This is true. He next asserts that although an equal division may in some cases be equitable, where such a division is made on the erroneous assumption that the law mandates an equal division of jointly held property in all cases, such a division must be set aside. *Hultberg v. Hultberg, supra* at 44. Citing *Hultberg,* he states that although an equal division in some cases may be equitable, where such a division is made on the erroneous assumption that the law mandates an equal division of jointly held property, irrespective of the contributions of the parties, such a division must be set aside.

Referring to a part of the memorandum opinion of the court, he contends that the trial court rendered its decision under the erroneous impression that equitable and equal are synonymous.

The part of the opinion which he relies upon reads:

"It should be readily noted that in this instance the court has taken the position championed by the plaintiff's attorney to the effect that *equitable and equal are synonymous.*" [Emphasis provided by Arthur.]

He further refers us to similar language contained in part III of the trial court's conclusions of law.

"VI.

"Title to all real property and personal property listed above will vest in the defendant, less the 1977 Buick, $2,500.00 worth of personal property, $40,000.00 cash, and the mortgage in the amount of $152,476.00 which will vest in the plaintiff.

"VII.

"The defendant shall also pay to the plaintiff, within the same 6-week period, the sum of $3,162.50, plus interest, to replace the savings account at Midwest Federal Savings & Loan in Harvey, North Dakota."

He concludes that under an erroneous view of the law the trial court has made an erroneous division of the property.

Our analysis of what the trial court has done is that it has adopted for the sake of this case alone, because of the circumstances of this case, a view that an equal division of the property other than the inherited property is an equitable division to the parties.

Such a conclusion, however, still leaves undecided the question of whether or not it was proper for the trial court to first take from the marital estate and award to the individual parties the property which he or she inherited.

In response to that issue, Catherine contends that under the *Ruff-Fischer* guidelines and the cases that have applied those guidelines to aid in the division of property, this court has affirmed divisions of property as not being clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure, when the trial court has taken into consideration that certain property was inherited.

In *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 at page 111 (1952), our court adopted the rule applied by the Supreme Court of Nebraska:

"In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and from all such elements the court should determine the rights of the parties . . ." 52 N.W.2d at 111.

In *Fischer v. Fischer,* 139 N.W.2d 845, 847 (N.D.1966), in syllabus ¶ 7 of the court, we added to the guidelines the phrase "and such other matters as may be material."

Although the rule leading up to and applied in *Fischer* was that the division of property would not be set aside in a divorce judgment unless it was found that the trial judge abused its discretion, since the adoption of Rule 52(a), N.D.R.Civ.P., we have applied Rule 52(a) in determining whether or not a trial court's division of property is equitable.[2]

Since *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972), and its progeny, we have applied the clearly erroneous test to findings of a trial court relating to the division of property between the parties in actions for divorce.[3]

---

**2.** "(a) *Effect.* In all actions tried upon the facts *without* a jury or with an *advisory* jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing temporary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." Rule 52(a), N.D.R.Civ.P.

**3.** "A review of the decisions of other courts which have applied the 'clearly erroneous' rule to divorce actions indicates that findings that a party to a divorce action has committed adultery, that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other, and that a particular division of property between the parties to a divorce action is equitable, have all been appropriately dealt with on appeal as findings of fact. *Spencer v. Spencer,* 258 Md. 281, 265 A.2d 755 (1970); *Franklin v. Franklin,* 257 Md. 678, 264 A.2d 829 (1970); *Meredith v. Meredith,* 91 Idaho 898, 434 P.2d 116 (Idaho 1967); *Ingram v. Ingram,* 385 S.W.2d 69 (Ky.1964). We adopt this reasoning." 202 N.W.2d at 763.

In *Bellon v. Bellon,* 213 N.W.2d 376 (N.D. 1973) and in *Grant v. Grant, supra,* we declined to hold clearly erroneous divisions of property made by trial courts which took into account inherited property and awarded it or part of it to the party who inherited it and thereafter divided the balance of the marital estate equally or substantially so.

In *Bellon,* this court approved a division of property which awarded to the wife two savings accounts totaling $18,192 which represented money the wife had inherited in recent years from her mother and aunt in addition to property totaling $26,483, and awarded to the husband property valued at $28,954. It did so saying it was applying the *Fischer* guidelines. *Bellon v. Bellon, supra* at 380.

In *Grant* this court upheld a division of property in which the trial court excluded one-half the value of five quarters of land acquired by the husband from his parents in determining the marital estate. The trial court did this on the basis that one-half of the value of the five quarters had been earned by the husband's work and the other half of the value had been intended as a gift from his parents to him. The trial court, in effect, excluded from the marital estate the one-half value intended as a gift to him.

■ This brings us to a consideration of the size of the present estate if the inherited property were included in it and the significance of the exclusion of it. The 80 acre tract of land was estimated to be of the value of $32,000, and the 160 acre tract of land was estimated to be of the value of $57,025. When $32,000 is added to the $202,476 in value awarded to Arthur and $57,025 is added to the $202,476 in value awarded to Catherine, one arrives at the sum of $493,977. The difference between what Arthur received and Catherine received amounts to $25,025, or .0506, or approximately five percent of the estate. From this perspective, it does not appear to us that the trial court's division of property is clearly erroneous. In so concluding, we take into consideration that the trial court may also have considered it beneficial, not only for Catherine, but also for Arthur, that Arthur be permitted to continue in the farming business and that to facilitate this, he awarded all of the real and personal property to Arthur subject to the obligations previously referred to. The trial court could also have considered that in times of inflation, land is more apt to keep abreast of inflation than a note which is tied to a definite amount of interest.

■ The next issue is whether or not the trial court erred in ordering interest to be computed on the $40,000 cash award and the $152,476 promissory note from the date of the trial of September 7, 1977, rather than from September 14, 1978, the date of the notice of the entry of the judgment. Incidentally, as the court did not specify when the interest on the cash payment of $3,162.50 should commence, we hold that it commences as of the service of the notice of the entry of judgment.

Arthur contends that the trial court's decision to have the interest on the money to be paid Catherine as part of her division of the property commence on the date of the trial was inequitable and clearly erroneous. Catherine on the other hand contends that the award of interest from the date of trial was intended to balance the equities and therefore could not be considered clearly erroneous. Catherine asserts that during the summer preceding the trial of this action in September of 1977, Arthur had the full use of all the farm machinery and of the farm itself, except for the farm home in which Catherine resided. Shortly following the trial, Catherine vacated the farm home to give Arthur complete control of the farm and all of its assets and he has apparently retained control of the farm and received the benefits of the farm income subject to the farm expenses since that time.

It is unfortunate that it took the trial court almost one year to decide this case, but it is conceivable that the trial court, in rendering its decision and in awarding the interest from the date of trial, attempted to alleviate the prejudice resulting from that delay.

Arthur asserts that this has prejudiced him greatly, but he has made no effort to account for the use of the property during that time. It should be noted that he had the benefit of the use of all of the 690 acres of land and all of the farm equipment during this period.

When he asserts that the assessment of the interest is inequitable, he has a responsibility to account for the use of the property during this time.

Incidentally, our computation of interest at seven percent for a year on the $40,000 item, and the $152,476 item comes to $13,473.32. When one considers that that is in lieu of Catherine's share of the crop for one year, it does not appear to be unreasonable. Although Arthur concedes that there is no statute or case law in North Dakota which prohibits what the trial court has done in this case in awarding interest from the date of trial, he asserts that this case may be compared to a breach of contract case and that in such cases where the amount of the claim is not known or determinable before judgment, interest cannot be awarded from the date of the breach of the contract but must be awarded only from the date of the judgment. Here he refers us to *Schweitz v. Robatham,* 194 Neb. 668, 234 N.W.2d 834 (1975) and *School Dist. No. 65R v. Universal Surety Co., Lincoln,* 178 Neb. 746, 135 N.W.2d 232 (1965). He also refers us to the case of *Heustis v. Heustis,* 381 S.W.2d 533 (Ky.1964) in which he states that the appellate court held that it was not error to deny interest to the wife from the date of the bringing of the suit for divorce. *Heustis* is clearly distinguishable on its facts as in that case the wife was attempting to secure interest from the commencement of the suit rather than from the date of the trial.

■ In the instant case, we view the trial judge's requirement that the interest commence with the date of the trial as merely one method of adjusting the equities in the case. He could have used other methods. That he chose this one does not mean that it would be appropriate in all cases under all circumstances. In other words, this case does not establish a precedent that under all circumstances interest may be awarded in divisions of property in divorce cases automatically from the date of trial.

In *In re Estate of Elmer,* 210 N.W.2d 815 at 820 (N.D.1973), we said:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." 210 N.W.2d at 820.

We have many times subsequently applied that test, particularly in divorce cases involving divisions of property. Applying it in this case we cannot say that the trial court's allowance of interest from date of trial leaves us with a definite and firm conviction that a mistake has been made, and accordingly this allowance was not clearly erroneous.

The third and last issue raised by Arthur is whether or not the interim order dated January 11, 1977, which, among other things, required Arthur to pay Catherine temporary support in the sum of $550 per month, terminated with service of the notice of the entry of judgment in this case. Arthur contends that it did so terminate.

The pertinent part of that order reads:

"Unless a written motion is served and filed in the office of the Clerk of the District Court of this county, within five (5) days from the date this Order is served upon the defendant, this Order shall be final and non-appealable pending the final determination of the case, or until further order of the Court."

Arthur contends that the judgment is the further order of the court and it is silent as to interim support and that accordingly, after the entry of the judgment, he had no further obligation to comply with the order for temporary support.

In support of his position, he refers us to *Albrecht v. Albrecht,* 120 N.W.2d 165 (N.D. 1963); *Richardson v. Richardson,* 218 Minn. 42, 15 N.W.2d 127 (1944); and *Trutnau v. Trutnau,* 221 Minn. 462, 22 N.W.2d 321 (1946).

He recognizes that *Raszler v. Raszler,* 80 N.W.2d 535 (N.D.1956) could be argued to support the proposition that an interim order has continuing validity when an appeal is taken, but asserts that that part which supports that view in *Raszler* is dictum and if not considered so by this court, he urges this court to set it aside.

Catherine responds to the effect that *Raszler* is on point and should apply.

■ In *Raszler,* the issue was over whether or not Mr. Raszler should be held in contempt of court for having failed to make monthly payments for the support of his daughter in the sum of $40 per month pursuant to the judgment in the divorce. His defense was in part that as he had continued to make payments to his wife pursuant to a temporary order in effect prior to judgment for her support subsequent to the entry of the judgment, which he contended the law did not require him to do, he should be found not in contempt. In discussing that issue, this court said:

"With regard to that, Section 14 0523, NDRC 1943, provides that: 'When an action for divorce is pending, the court in its discretion may require either party to pay as alimony any money necessary for the support of the other party, or of children of the marriage, or to prosecute or defend the action.' The question arises whether that section applies while the action is pending on appeal. Section 14–0524, NDRC 1943, makes provision for permanent alimony on division of the property when a divorce is granted but that is stayed on appeal. In 17 Am.Jur.,

Divorce and Separation, Section 537, p. 434, it is stated:

'The duration of an allowance of alimony pendente lite, is designated by the terminology. It continues during the pendency of the suit only, which period includes, when an appeal has been taken, the pendency of the appeal.'" 80 N.W.2d at 538.

We conclude that the view adopted in *Raszler* as expounded by the writers of American Jurisprudence is the proper view and that it should apply in this case.[4]

Arthur's contention that to apply that rule is to discourage appeal is not convincing.

■ It is our opinion that because the judgment was silent as to the order, that the order continued in effect until amended or until the case was finally determined upon appeal. Having so concluded, Arthur's contention that the trial court was without authority to amend the order as it did on January 10, 1979, to increase the support payments is without merit. In conjunction with this latter contention of Arthur's, it should be noted that no appeal was taken from that order and, accordingly, it is questionable whether that issue is before us. Notwithstanding that fact, we have made the statements herein to attempt to alleviate as much confusion as possible on the remand of this case.

Lest it be thought that we have not considered Arthur's citations in this matter, we shall briefly comment thereon. *Albrecht* is clearly distinguishable on its facts. In *Al-*

---

4. Section 14–05–23, N.D.C.C., is quite similar to its predecessor, Section 14 -0523, N.D.R.C. 1943.

"14–05–23. *Temporary support, restraining orders, attorney fees, and custody.*—During any time in which an action for divorce is pending or a family court has jurisdiction, the court, upon application of a party, may issue, ex parte, an order requiring a party to pay such support as may be necessary for the support of a party and any minor children of the parties and attorney fees and awarding custody of any minor children to any party. Such orders may be issued and served in accordance with such rules as are promulgated and filed with the clerks of the district courts within the judicial district from time to time by the district judges of the judicial district. The party to whom the order is directed shall have the right, upon motion, to have a hearing upon the necessity for the issuance of such an order or the amounts to be paid, and unless such a motion is served and filed in the office of the clerk of the district court within five days after service of an order issued under the provisions of this section, the order shall be final and non-appealable pending a final determination of the issues raised by the pleadings or until further order of the court." § 14–05–23, N.D. C.C.

*brecht* this court was considering the third appeal involving the parties. The issue was not over an interim order pending the determination of the case on appeal such as is involved in the instant case.

*Richardson* is also distinguishable on its facts as in that case the plaintiff wife had secured a temporary order for the payment of alimony pending determination of her divorce. Her husband, the defendant, had defaulted in those payments and so when the decree was entered, she was awarded judgment for the amount of the payments in default. Final decree was entered on February 13, 1941. On August 5, 1943, she initiated proceedings alleging her former husband to be in contempt for failing to make the temporary alimony payments granted by the order of March 21, 1940.

Under those circumstances, the Minnesota Supreme Court held that the final entry of judgment and decree of divorce superseded the order for temporary alimony. Although that case is clearly distinguishable from the instant case, we are not impressed either with the reasoning of the court or with its result. Apparently the court was not impressed with the result as it declined to allow costs to the victorious defendant because the record revealed such "an evident lack of good faith on the part of the defendant in complying with the decree."

In *Trutnau,* another decision of the Minnesota Supreme Court, the question in the case was whether or not a husband could be found guilty of contempt after entry of judgment of divorce for failing to pay temporary alimony allowed by a prior order of the court where the judgment reserved to the wife the right to the allowances provided for in the order.

The court distinguished *Richardson* and concluded that because the judgment and order amending it made a provision for payment of the allowances to the wife, that the payments could be enforced by contempt proceedings. *Trutnau* is therefore compatible with *Richardson* and consistent therewith. Our view is, however, that a temporary support order under our statute continues in force if an appeal is taken from the judgment even though no reference is made in the judgment continuing the order.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.